SIMON DOLPH, Complainant, Appellee,

*vs.*

SIMEON CLEMENS, Defendant, Appellant.

APPEAL IN EQUITY FROM THE CIRCUIT COURT OF WAUKESHA COUNTY.

A submission to arbitrators during the pendency of an appeal from a judgment rendered before a justice of the peace, of the subject matter thereof, followed by an award, works a discontinuance of the suit.

Proceedings before arbitrators are presumed by a court to have been regular and legal, unless the contrary is shown, and courts will make every reasonable intendment in favor of awards, and will support them if possible.

BOTH the parties took an appeal in this case, and it is understood that they were both heard together. The pleadings and proofs are quite voluminous, but the mutual portions will be condensed as much as possible.

In the month of September, 1849, Clemens recovered two judgments against Dolph, before justices of the peace, one for $10 damages and $11.50 costs, and another for $155 damages, and $12.17 costs, both of which were appealed to the Circuit Court of Waukesha county. While these appealed suits were pending, the parties entered into a submission of "all, and all manner of action or actions, cause or causes of action, suits, bills, bonds, specialties, judgments, executions, quarrels, controversies, trespasses, damages, and all claims and demands, of whatever name or nature, at any time heretofore had, made, moved, bought, commenced, prosecuted, done, suffered, committing or depending by and between the said parties, so as the said award be made in writing under the hands and seals of the said John S. Rockwell and Washington W. Collins, and ready to be delivered to the said parties in difference, or such of them as shall desire the same, on or before the first day of March next."

The parties entered into an arbitration bond in the penalty of $500, dated January 2, 1850, to stand to and abide by the award to be made by the arbitrators mentioned, Rockwell and Collins aforesaid. The parties appeared before the arbitrators, who

made an award that Dolph should pay to Clemens thirty dollars and all costs legally taxable to either party in the said suits in the Circuit Court, and that the parties should each respectively execute releases to the other of all demands and causes of action whatsoever. It is not positively certain on what day the award was published. Afterwards, on the 21st day of March, 1850, the defendant procured said appeals to be dismissed on his motion, at the cost of the complainant, which were afterwards taxed against, and paid by him, as he insisted, agreeably to the terms of the award.

Afterwards the defendant caused a transcript from the justices aforesaid, of one of the judgments aforesaid, to be filed in the Circuit Court, and thereupon took out an execution from the Circuit Court, and caused the real estate of the complainant to be levied upon and sold by the sheriff, the defendant being the purchaser, for the sum of $112, and took from the sheriff the usual certificate, stating that the purchaser would be entitled to a deed at the expiration of twenty-seven months, unless the land was sooner redeemed. The certificate was dated the 20th day of September, 1851. The value of the lands sold was variously estimated at from $2,000 to $4,000 at the time of sale, and were incumbered for about $1,400. Dolph had tendered to the defendant $29, the amount alleged to be due on the award, which was refused.

There was a good deal of contention before the arbitrators, and both parties were dissatisfied with the award, and Dolph was heard to say several times that he would not pay it. Nevertheless, the award was taken by Clemens and left by him at Dolph's house, some time after the arbitration. The award was not dated, but was in writing and under the seals of the arbitrators.

It was insisted in the answer, that the defendant assented to sign the submission on the express condition that Dolph should immediately discontinue his appeals; and it was further alleged in the answer, that the award was abandoned by the mutual agreement of the parties, but these averments were not sustained by proof.

. A good deal of testimony was taken and read upon the hearing, the effect of which is stated in the opinion of this court.

Dolph vs. Clemens.

At the March term, 1855, the Circuit Court made a decree, "that the complainant pay or cause to be paid to the defendant, the sum of $112, being the amount for which the premises mentioned in the complainant's bill, were sold under the execution or executions issued out of said court, with interest thereon at ten per cent. per annum, from the day of sale; and that said payment be made to the defendant in person, or to the clerk of said court, for his use, on or before the 11th day of the next following June; and that when said payment shall be made, the same shall be in full satisfaction and discharge of said sale, and of the executions and judgments under and by virtue of which the same were made; and also of all claims and demands between the said parties which were submitted to arbitration, under and by virtue of the bond of submission mentioned in said bill of complaint, and of any award which may have been made thereon. And further, that when said payment shall have been made, each party do pay their own proper costs in this suit.

" And further, that in case the complainant neglect or refuse to pay the said sum of $112 and interest as aforesaid, the said sale in all respects stand confirmed, and the complainant's bill be dismissed, with costs to be taxed in full."

*J. E. Arnold*, for the complainant.

*Peter Yates*, for the defendant.

*By the Court*, COLE, J. We are not able to understand upon what ground the Circuit Court proceeded, in rendering the decree in this cause. For if the hypothesis be adopted that the submission of the suits pending on appeal to arbitrators, did not operate as a discontinuance of them, or did not in any way affect the judgments of the justice; that those judgments at the time the transcripts were filed, were good and valid judgments, and the sales made under them, legal and proper, we cannot then see why Clemens should not have his sheriff's deed upon the expiration of the time given by statute for Dolph to redeem. In this view of the case, when the deed became due, why should the court interfere and force Clemens to take the amount due upon the sheriff's certificates?

Dolph vs. Clemens.

But if, on the other hand, it is held that by this submission of the suits to arbitrators, *eo acto*, they were discontinued; and the judgments of the justice, as well as all other matters embraced in the award, and the sales made under these judgments by the sheriff, null and void; then what principle of law or equity applicable to the case, requires that Dolph's rights should be prejudiced by these sales, thus illegally made, or why should he pay any more than the award in consequence of these proceedings? If Clemens has undertaken to sell property under judgments that were no judgments, he should abide by the legal consequences of his own acts.

Upon examination of the proofs in this case, it will appear beyond all doubt, that there was a submission of the suits pending an appeal in the Circuit Court, to arbitrators; and we think there is as little room to doubt that a good and valid award was made by the arbitrators, according to the bond of submission. What, then, was the effect of this submission upon the suits pending in court? It necessarily operated as a discontinuance of them. *Camp and another, Adm'r &c. of Clark vs. Root,* 18 *J. R.* 22; *Ex parte Wright,* 6 *Cowen,* 399; *The People ex rel. Van Cortlandt vs. Onondaga, C. P.* 1 *Wend.* 314; *Miller vs. Van Auken, id.* 516; *Larkins vs. Rabbins,* 2 *id.* 505; *Toon vs. Wilcox,* 12 *id.* 503; *West vs. Stanley,* 1 *Hill,* 69; *Smith vs. Barse,* 2 *Hill,* 387; *Wells vs. Lain,* 15 *Wend.* 99; *Muckey vs. Pierce,* 3 *Wis. R.* 307.

And we likewise think that the submission removed all the proceedings before the justice to another tribunal, and that those matters became merged in the award. At all events, if there could be any question as to whether the original judgments before the justice remained in full force after the discontinuance of the appeals therefrom by submission—as is intimated in the case of *Miller vs. Van Auken* (1 *Wend.* 516)—there can be none after we examine the condition of the bond of submission in this case. The submission is as comprehensive as language can make it. It includes "all manner of action and actions, cause or causes of action, suits, bills, bonds, specialties, *judgments,* executions, quarrels, controversies, trespasses, damages, and all claims and demands of whatever name or nature at any time heretofore had, moved, made, brought, commenced, sued, prosecuted, done, suffered, committed, or depending by and be-

tween the parties. It was competent for the parties, if they saw fit, to refer the question whether or not the judgments were erroneous, void, or had been fraudulently obtained, to the arbitrators, and we see no objection to this proceeding. *Waison on Arb. & Award,* 59; *Roberts vs. Marriott,* 2 *Saund.* 190.

The judgments submitted here were ones to which appeals had been interposed; and it appears from the face of the award that the subject matter of these suits pending an appeal, was examined into by the arbitrators. That being the case, we think the parties should abide by the decision of the tribunal to which they have chosen to refer all their differences.

It follows, then, the suits having been discontinued, that there were no cases pending in the Circuit Court to be dismissed. The cases were already out of court, and as a matter of course, it had no jurisdiction of them.

The counsel for the defendant, Clemens, is compelled to admit that as a general proposition, the submission of a cause to arbitrators amounts to a discontinuance of the suit; but he insists that it is competent for the parties by common consent, to waive the submission and award, re-instate the cause in court, and proceed to judgment, citing 1 *Wend.* 314; 2 *Hill,* 389. In the former case the party who might have insisted upon the discontinuance, waived it by appearing at the trial of the cause and defending the same upon the merits. He raised the question of discontinuance after verdict, but the court decided that he had waived it. Bronson, J., in *Smith vs. Barre* (2 *Hill,* 389), makes the following observation upon this case: "The suit was at an end, unless the parties had afterwards waived the discontinuance by going on with the action by common consent."

In the case under consideration, does it appear, as asserted, that the parties mutually abandoned the submission and award, and went into court for the settlement of their differences? We think not. The testimony shows that there was considerable wrangling before the arbitrators, that Dolph was dissatisfied with the award, and repeatedly said he would not pay it. But notwithstanding the quarreling before the arbitrators, they made their award, and a copy of it was left by Clemens at Dolph's house. As far as acts are concerned, this was an end of the matter until the transcripts of the justice's judgments were filed, about a

year and a half afterwards. We have not overlooked the action of the Circuit Court in dismissing the appeals in March, 1850, upon the motion of Clemens' attorney. But Dolph never appeared in court, never agreed to a re-instatement of the cause, or that he would proceed with it as though it had not been discontinued. His declarations that he would not pay the award, that it was outrageous, and all that, did not affect the rights of either party. He might have been sued upon the award, or bond of submission, and made to pay.

Objections are taken to the award, that witnesses were not sworn, or competent evidence of any kind introduced, or facts agreed upon. It does not appear upon what evidence the arbitrators based their award. We presume they proceeded regularly and properly, and received all the testimony that was offered. The parties were present, and if there was any error of the arbitrators they should show it. We are not to presume error in their action. Courts make every reasonable intendment in favor of awards, and will support them if possible. *Watson on Arb. and Aw.* 176 ; *Kyd, id.*; *Rolle Arb.* (*K.*) (*M.*) (*N.*) 12 *Wend.* 159 ; 19 *id.* 285.

Again; it is said the award was not made in time, and therefore was not binding. We do not think that is established by proof. The award does not bear date. The arbitrator, Collins, thinks in one place that it was made shortly after the submission, which was January 2, 1850 ; and in another place that it was made the last of March or first of April. When first examined he did not know whether the submission was in writing or not. The recollection of this witness, as well as that of the other arbitrator, is quite too indistinct to guide us to a safe conclusion as to what was done, and particularly as to the time the award was made. They undoubtedly testified the best of their recollection, but the whole transaction had faded very much from their memory.

The only remaining point to be noticed, is that, admitting there was a proper and legal arbitration, and a valid award founded upon competent evidence, yet that the complainant Dolph had a full and adequate remedy at law, and a court of equity, therefore, ought not to interfere to grant him relief. We do not, however, think that Dolph could have had full re-

lief upon a motion made in due time in the Circuit Court. He might, perhaps, by such motion, have set aside the judgments in the Circuit Court for costs, upon the ground of irregularity; but how would that motion have affected the judgments in the justice's court? Would they have been set aside, by a motion in the Circuit Court? It will be recollected that transcripts of those judgments were not filed until 28th July, 1851, and September, 1851, a year and a half, or thereabouts, after the rendition of judgment for costs on the dismissal of the appeals. And for that matter, Clemens might have never filed transcripts of them if he had found personal property to satisfy them. We, therefore, do not think that the complainant might have obtained full relief by a motion in the Circuit Court.

Under all the circumstances of the case we think it equitable and just that the parties be decreed to stand by and abide the award made by the arbitrators. We might, perhaps, have been disposed to have granted the complainant full relief, so far as this suit was concerned, without his paying the amount due by the award, leaving the defendant to his own action at law, had the complainant insisted upon it, but he has not. He prays for relief upon paying the amount before tendered as due upon the award. The decree, therefore, will be that upon the complainant's paying Clemens the amount awarded him, and interest on that sum up to the time the tender was made, and the costs according to the award; that the parties execute mutual releases, and the sheriff's certificates be delivered up and canceled, and that the complainant recover costs upon this appeal.