Bennett vs. The State.

BENNETT vs. THE STATE.

*January 15 — February 20, 1883.*

CONSTITUTIONAL LAW: CRIMINAL LAW AND PRACTICE.· *(1–3) Trial by jury. (2) Waiver of right to trial in county where offense committed. (3) Trial of special issue of insanity. (4) Motion for new trial. (5, 6) Evidence: opinions of experts: hypothetical questions. (7) Instructions as to insanity, and (8) as to degrees of homicide.*

1. Sec. 5, art. I, of the constitution was intended to secure the right of trial by jury in civil, not in criminal, cases.
2. The right secured by sec. 7, art. I, of the constitution, "to a speedy public trial by an impartial jury of the *county or district wherein the offense shall have been committed,*" is waived by the accused when, upon his application, the place of trial is changed to another county.
3. The right of trial by jury guaranteed by the constitution does not necessarily mean a trial upon such pleadings as were in use at the time the constitution was adopted; and secs. 4697–99, R. S., which provide that in criminal actions the defense of insanity shall be specially pleaded, that the issue upon such special plea shall be first tried by the jury impaneled to try the action, and that the finding of the jury upon that issue shall be final and conclusive upon the question of insanity, are not unconstitutional.
4. Where insanity is specially pleaded the trial of that issue and the trial upon the plea of not guilty must be treated as one, and no motion to set aside the verdict upon the special plea and for a new trial need be made by the accused, in order to save his rights, until he is convicted upon the plea of not guilty.

| 57 | 69 |
| 74 | 520 |
| 74 | 521 |
| 57 | 69 |
| 75 | 21 |
| 57 | 69 |
| 78 | 88 |
| 57 | 69 |
| 82 | 207 |
| 57 | 69 |
| 193 | 338 |
| 57 | 69 |
| 95 | 291 |
| 57 | 69 |
| 104 | 536 |

5. The jury should be clearly informed of the exact state of facts upon which an expert witness bases his opinion. This is perhaps best accomplished by limiting him to answering hypothetical questions; and if it be proper, in any case where there is a conflict of evidence or any doubt as to what the evidence is, to permit an expert who has heard the evidence to give his opinion thereon, he should be required to state fully his understanding as to what facts are established by such evidence. *Wright v. Hardy*, 22 Wis., 348, distinguished.

6. In this case, the evidence being voluminous and not entirely harmonious and uncontradictory, it was error to permit an expert witness to answer the question: "What, in your opinion, would all the facts as sworn to by the several witnesses, if true, indicate as to the mental condition of the prisoner at the time of the commission of the offense?"

7. Instructions to the effect that if the accused had sufficient power of mind and will to deliberate and premeditate a design to effect the death of the deceased, the jury should find that he was sane, are *held* erroneous as leaving out of consideration the power of the accused to determine properly the true nature and character of his act.

8. TAYLOR, J., is of the opinion that whenever in a trial for murder, the evidence is susceptible of a construction which would justify the jury in finding the accused guilty of murder in any of the degrees or of some one of the degrees of manslaughter, the court should, upon request, instruct the jury upon that subject by calling their attention to the law defining the degrees of murder or manslaughter to which the evidence might reasonably be applied. Whether a refusal to give such instructions in a proper case, and charging the jury that they must convict of the higher crime or acquit, would be error, is not determined.

ERROR to the Circuit Court for *La Crosse* County.

The case is stated in the opinion. Upon the issue of not guilty, the following instruction was asked on behalf of the defendant, but was refused by the court: "If the jury find that the killing of Dr. Hogle by the defendant was done by the perpetration of an act imminently dangerous to others, and evincing a depraved mind, regardless of human life, without any premeditated design to effect the death of the person killed, or of any human being, the jury may find the

defendant guilty of murder in the second degree." Upon the subject of drunkenness the court charged the jury as follows: "It is claimed on account of the defendant that at the time when he killed Dr. Hogle he was drunk. Drunkenness is no excuse or palliation of an offense unless it was of so deep a degree that he was incapable of forming the design to effect the death of Dr. Hogle. If he had at the time sufficient power of mind and will to deliberate, premeditate, and determine upon the killing of Dr. Hogle at the time when he fired that fatal shot, and had that purpose at the time, then it is murder in the first degree."

*Silverthorn & Hurley*, for the plaintiff in error, contended, *inter alia*, that it was error to refuse to give the instruction above quoted. That instruction was drawn to meet the provisions of sec. 4339, R. S. If it had been given, the jury, under the overwhelming evidence as to the defendant's intoxication at the time of the shooting, could have found a verdict of murder in the second degree, and such would, in all probability, have been their verdict. The intoxication was no defense to the *fact of guilt;* but, under the statute providing that murder in the first degree shall be deliberate and premeditated killing, it was a material fact in the determination of the question whether the defendant was capable of deliberate premeditation, and hence in determining the *degree of his guilt.* The refusal of the instruction took that fact from the consideration of the jury and, with the whole charge given, was equivalent to an instruction to find a verdict of murder in the first degree, or of not guilty. See Wharton's Cr. Law, § 41, and note *p.; Roberts v. People*, 19 Mich., 401; *People v. Walker*, 38 id., 156; *Hopt v. People*, 104 U. S., 631; *Andersen v. State*, 43 Conn., 514.

*The Attorney General*, for the defendant in error.

TAYLOR, J. The plaintiff in error was convicted of murder in the first degree upon an information filed against him

in the circuit court of Marathon county. Upon the applica-
tion of the plaintiff in error the place of trial was changed
to La Crosse county. The change was made on the ground
of the alleged prejudice of the judge of the circuit court of
Marathon county. On his arraignment upon the informa-
tion, the plaintiff in error, through his counsel, interposed a
plea of not guilty, together with a special plea of insanity
setting forth in substance that at the time of the commission
of the offense charged in the information the plaintiff in
error was insane. To this special plea the state put in a reply
denying the insanity. Upon the issue so made in the case a
jury was duly impaneled and sworn to try the same. The
issue upon the plea of insanity was tried first, and upon that
plea the jury found a verdict against the plaintiff in error,
and that he was sane. After the rendition of such verdict
the case was tried upon the plea of not guilty, by the same
jury, and a verdict rendered that the plaintiff in error was
guilty of murder in the first degree. The plaintiff thereupon
moved the court to set aside such verdict and for a new trial
for reasons hereinafter stated. The motion was denied, and
the plaintiff in error was sentenced to imprisonment for life.
Afterwards a bill of exceptions was settled containing all the
evidence and exceptions taken at the trial upon both issues,
and the record was brought to this court by a writ of error.

Upon the motion to set aside the verdict and for a new
trial, the plaintiff in error set out in writing the following as
the grounds of such motion: "(1) That the court erred in
its rulings and decisions during the trial in admitting evidence
against the defendant's objections. (2) That the court erred
in charging and directing the jury as well upon the special
plea of the defendant as upon the issue of not guilty.
(3) That the court erred in refusing to charge and direct the
jury both upon the special and general issue as requested in
writing by the defendant. (4) That the verdict of the jury
upon the special plea, whereby the jury find the defendant

sane at the time of the killing, is unsupported by the evidence, and contrary to the law and the evidence. (5) That the court erred in refusing to charge the jury as requested by the defendant's counsel in writing, permitting the jury, under all the evidence in the case, to find a verdict of murder in the second degree. (6) That the verdict of the jury, whereby they find the defendant guilty of murder in the first degree, is unsupported by the evidence, and contrary to the law and the evidence."

In this court the plaintiff in error assigns as a reason for the reversal of the judgment herein, a matter which was not spoken of in the court below, so far as the record discloses, viz.: that the statute of this state which requires the defendant in a criminal action, who claims that he was insane at the time of the commission of the alleged offense, to plead that matter separately and as a special plea with the plea of not guilty, and that the issue on the plea of insanity shall be first tried by the jury impaneled in the action; that the verdict of the jury upon that plea shall be taken before the case is tried upon the plea of not guilty; and which further provides that if the verdict of the jury on such plea is that the defendant was not insane at the time of the commission of the offense, then his trial upon the plea of not guilty shall at once proceed before the same jury, and the finding of the jury upon such special plea shall be final and conclusive upon the question of his insanity at the time of the commission of the offense,— is unconstitutional and void. The sections of the law governing the proceedings in such cases are 4697, 4698, and 4699. Although we have serious doubts as to the right of the plaintiff in error to raise that question for the first time in this court, after having acquiesced without objection to a trial in strict conformity to the provisions of the law referred to, yet as a new trial must be ordered in the case for the reasons hereinafter stated, and as the question has been argued by the

counsel for the respective parties, we have concluded to treat the question as in the case, to determine the same, and indicate the practice under the law.

It is said the sections of the statute above cited are unconstitutional, because they deprive the accused of the right of trial by jury, secured to him by secs. 5 and 7 of art. I of the constitution of this state. It is evident that sec. 5, referred to, was intended to secure the right of trial by jury in civil and not in criminal actions. The words in the section, "and shall extend to all cases at law, without regard to the amount in controversy," clearly limit the provisions of that section to civil actions at law, and exclude the idea that it was intended to apply to criminal actions. The provision in said section that "a jury trial may be waived by the *parties* in all cases, in the manner prescribed by law," confirms this construction of the section. In the constitution, the state and the defendant in criminal prosecutions are not spoken of as parties to an action. Under this section, this court has repeatedly held that a party to an action may waive the right of trial by jury, not only in the manner prescribed by law, but by not taking exceptions on the trial of an action without a jury, the right to which is secured to him by this section. *Millett v. Hayford*, 1 Wis., 401; *Norval v. Rice*, 2 Wis., 22; *Leonard v. Rogan*, 20 Wis., 540; *May v. Railroad Co.*, 3 Wis., 218; *Pratt v. Donovan*, 10 Wis., 378. If the defendant's right of trial by a jury is secured by sec. 5 only, then it would seem he might waive the right, and if he proceeded to trial without objection before a jury, not being a common law jury, or not proceeding according to the common law, he would waive his right to a constitutional jury.

Sec. 7 of article I of the constitution declares that in all criminal prosecutions the accused shall, among other things, "have the right to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been

committed, which county or district shall have been previously ascertained by law." It may be assumed that this section secures to the accused in all criminal prosecutions a *right of trial* by jury, and that the jury mentioned in said section means a jury of twelve impartial men,— such a jury as was known to the common law and to the courts of the territory of Wisconsin before the state was organized. See *Millett v. Hayford*, 1 Wis., 401; *Norval v. Rice*, 2 Wis., 22; *Gaston v. Babcock*, 6 Wis., 503; *Stilwell v. Kellogg*, 14 Wis., 461.

In the case at bar there is no complaint on the part of the accused that the jury which tried the action was not a jury of twelve impartial men of the county or district where the offense was committed, although the record shows very clearly that the crime was committed in the county of Marathon and the trial was had in the county of La Crosse; but the place of trial was changed to La Crosse upon the application of the accused, and he must be held, therefore, to have waived his right under the constitution to a trial by an impartial jury of the county where the offense was committed. His power to waive that constitutional right has never been questioned, and is constantly acted upon by all the trial courts in the state. If that right cannot be waived, then all the laws for the change of the place of trial on the application of the accused, as well as on the part of the state, are void. The supreme court of Tennessee expressly held that under a constitutional provision in all respects like ours, the defendant could waive the right to be tried by a jury of the county or district in which the offense was committed. *Dula v. State*, 8 Yerger, 511. This court has held that the place of trial must be the county where the crime was committed, unless the change was made on the application of the defendant. *Wheeler v. State*, 24 Wis., 52. But it has never been held that the place of trial might not be changed on the application of the defendant. The power of the ac-

cused to waive this right has been constantly recognized in this court. It has also been held that the accused may waive the right to meet the witnesses face to face on the trial. *U. S. v. Sacramento*, 2 Mont., 239; *Miller v. State*, 25 Wis., 384. It will be seen, by an examination of the cases cited in 1 Bishop on Crim. Proced., §§ 117–123, that the accused may waive many things upon the trial which are secured to him as a right either by the law or the constitution.

But it is unnecessary to determine whether the accused waived any of his rights by not objecting to the manner of conducting the trial in the court below, as we are of the opinion that the sections of the statute above referred to are not in conflict with the provisions of sec. 7 of article I of the constitution, above quoted. He was tried by a jury of twelve impartial men, drawn, impaneled, and sworn in the manner prescribed by the law, and that jury decided all questions of fact which were put in issue by the defendant's pleas; and the only contention made by the learned counsel for the plaintiff in error upon this point is that the trial by jury, secured to the defendant by the constitution, secures to him a trial upon such pleadings as were in use at the time the constitution was adopted.

At common law, and according to the practice in the territory before the adoption of the constitution, in criminal cases, and at the time of the adoption of the constitution, the accused was only required to plead not guilty, and under that plea he might give. in evidence any facts which would establish his innocence, and in civil actions a system of pleadings was in use adopted from the common law. If the right of trial by jury includes the right to be tried upon such pleadings as were in use in the courts of the territory of Wisconsin at the time of the adoption of the constitution, then all the legislation of this state upon the subject of pleadings, both in civil and criminal cases, would be unconstitutional and void. No one has yet attacked the constitu-

tionality of laws regulating pleadings in civil actions, and in the case of *Rowan v. State*, 30 Wis., 129–149, it was held that the statute declaring what should be a sufficient statement of the offense in an indictment or information for murder, did not violate any constitutional provision, although a very radical change was made by the statute in the form of the indictment for that offense. The same ruling was made by the supreme court of Tennessee in the case of *Sizemore v. State*, 3 Head, 26.

But, it is said, if it be admitted that the legislature have the power to regulate and prescribe the pleadings in a criminal case, and require the defendant either to plead certain matters as a defense, or be excluded from proving such matters on the trial, still it has not the power to require the jury to find a separate verdict upon the separate issues required to be made on the pleadings. Bishop, in his Criminal Procedure, vol. 1, § 749, shows that it was the practice in England to require the defendant to set up in separate pleas all the defenses he has to the action by way of abatement or otherwise, in connection with the plea of not guilty, when all the issues upon such pleas must be tried in the same manner. Quoting from Hawkins, he says: " If a defendant in an indictment for felony think it proper to make use of never so many pleas or exceptions of this kind, requiring all of them the same kind of trial, he may take advantage of them all, unless they be repugnant to one another. . . . And if such pleas or exceptions be all of them triable by the county, it seems to have been generally agreed that the defendant must at the same time plead also with them all his matters in bar, if he have any such, and also plead over to the felony, unless where he hath admitted the fact by the matter pleaded in bar." In Tennessee the right of the defendant to plead a former conviction with a plea of not guilty, or any other plea which would be a defense to the indictment, is secured by statute. 2 St. Tenn. (1871), § 5211*a*.

The foregoing citations clearly show that there is no constitutional objection to the statute which requires the accused to plead insanity at the time of the commission of the offense charged, as a separate defense to the information, together with the plea of not guilty. The only other objection made to the act is that it requires the jury to dispose of this plea by a verdict thereon before the trial shall proceed upon the plea of not guilty. This, we think, is a matter which relates merely to the form of a jury trial, and not to the substance; and it is also commendable as being the most practical and convenient method of disposing of the whole case. If the jury find the insanity, there will be no need of going through the trial upon the plea of not guilty; such finding disposes of the whole case. Suppose a former conviction or former acquittal was pleaded, together with the plea of not guilty, certainly an orderly disposition of these issues would be to try the issue on such first-named plea before the issue upon the plea of not guilty; and in such case it is clear that if the verdict on such plea was against the accused, it would be conclusive upon the trial of the issue of not guilty.

It may be said that the issue on the plea of insanity is not like the plea of a former conviction or acquittal, because the question of insanity is and always was a fact which might be given in evidence under the plea of not guilty, and that the defendant cannot be required, against his consent, to make a special issue upon that fact, and proceed to try it separately, and be concluded by the verdict thereon when he is tried on the plea of not guilty; that if he can be compelled to be tried upon such issue separately, he may be compelled to plead separately, in all indictments or informations for murder or homicide, that the killing was in self-defense, or that it happened by misadventure or accident, and thus require the accused, in every case of homicide where he did not deny the killing, to plead specially his defense. Even if the support of this statute goes to that extent, we

do not see how this takes away the defendant's right to a jury trial. Such a statute would simply regulate the pleadings and mode of procedure, and not go to the substance of a trial by jury. All the issues would still be tried by a jury, in the same way they are now tried. The only burden imposed upon the accused is that he shall be required to set out his several defenses in his pleadings, instead of including them all together in the plea of not guilty. If the accused, under the plea of not guilty, relies upon insanity as a defense, the jury must necessarily determine that question when they render their general verdict; and if they acquit for that cause, the statutes of this state have always required the jury should so state in their verdict. No exception has ever been made to that requirement of the statute.

In some respects the present law is advantageous to the accused, as it gives him the affirmative of the issue on the question of insanity, and so gives him the right to the close in the argument of that issue before the jury, which is always deemed an advantage in criminal prosecutions. The mere fact that the act requires the jury to announce their verdict upon this issue before the court proceeds to try the other issue, cannot render the law unconstitutional. If it be unconstitutional at all, it must be upon the ground that the defendant is compelled to plead insanity specially as a defense to the information, or waive his right to give evidence of it as a defense upon the trial. It is clear, if the legislature have the power to compel the defendant to plead insanity as a defense, or waive it, then it has the power to prescribe the manner of disposing of that issue on the trial so long as it leaves the accused a trial by jury upon such issue.

In *Perry v. State*, 9 Wis., 19, this court held "that to preserve the right of trial by jury it is not necessary to continue the particular method of designating jurors in force at the time of the adoption of the constitution. The mode is within the control of the legislature. All that the right of

trial by jury includes is a fair and impartial jury, not the particular mode of designating it." See, also, *Randall v. Kehlor*, 60 Me., 37; *Beers v. Beers*, 4 Conn., 535; *Jones v. Robbins*, 8 Gray, 329. Judge Cooley, speaking of the trial by jury guaranteed by the constitution to the accused, says "that in all those cases triable by a jury at common law," the accused is entitled to such trial, "with all the common law incidents to a jury trial; so far, at least, as they can be regarded as tending to the protection of the accused." The operation of this law is manifestly salutary in a case where a party is charged with a crime, who is apparently insane. In such case it would be in accordance with our idea of justice to first inquire as to the sanity of the accused before putting him on trial for the commission of a high crime. If the accused at the time of trial is, in fact, insane, he is not in a condition to answer the charge against him, and justice seems to demand that the question of his capacity to plead to the charge should be first ascertained before compelling him to a trial upon the issue of not guilty. And we see no impropriety in trying the sane issue first, where there are serious doubts as to the insanity of the accused, if such insanity be set up as a defense. It does not seem to us to deprive the accused of any of the incidents of a jury trial, which can be regarded as tending to his protection. Without pursuing this argument further, we are of the opinion that the law in question is a salutary law, and does not deprive the defendant of any constitutional right or privilege.

The learned attorney general argued that the defendant could not take any advantage of his exceptions taken on the trial of the issue of insanity in this court, because he did not move to set aside the verdict on that issue for errors committed on the trial thereof, before proceeding to trial on the plea of not guilty. We do not agree with the learned attorney general upon that point. We think the trial upon both issues must be treated as one trial, and that no motion to set

aside the verdict and for a new trial need be made by the accused, in order to save his rights, until he is convicted upon the plea of not guilty. In settling the bill of exceptions the proceedings upon both issues may be inserted therein, and all exceptions taken upon the trial of either issue by the accused may be reviewed in this court upon writ of error; and any error which shows that the accused may have been prejudiced upon the issue of insanity, must reverse the final judgment, as such judgment is in fact based upon the verdict upon the plea of insanity as well as upon the plea of not guilty.

The counsel for the plaintiff in error insists that it was error on the part of the trial court to permit the witness Dr. Kempster, as an expert on the part of the state, to answer the following questions on the trial of the issue as to the insanity of the accused: "(1) Do you see anything in his conduct that day, and taking the testimony as true, that would indicate *delirium tremens?* (2) What, in your opinion, would all the facts as sworn to by the several witnesses, if true, indicate as to the mental condition of the prisoner at the time of the commission of the offense?" Both questions were objected to by the accused and the objections were overruled, and the witness answered to the first, "I do not; I can see no evidence of *delirium tremens* in the case;" and to the second, "That he was of sound mind."

It is said by the learned attorney general that questions in all respects similar to the ones above propounded to Dr. Kempster are sanctioned as proper questions, and consequently it was not error to permit them to be answered, as was done in this case and the case of *Wright v. Hardy,* 22 Wis., 348. *Heald v. Thing,* 45 Me., 392–396; *Rex v. Leash,* 1 Macl. & R., 75; 1 Greenl. on Ev., § 400. In the case of *Wright v. Hardy* this court held that it was competent to ask a medical expert, who had heard the evidence given by a single witness as to the way a leg had been amputated,

and its subsequent treatment, the following questions: "Suppose his statement relative to the amputation and its subsequent treatment to be truthful, was or was not the amputation well performed? Was the subsequent treatment of patient proper or improper?" This does not present the same case now before the court. There a single witness had made a statement as to the amputation of a leg, and the subsequent treatment thereof; the expert had heard this statement when made in court. There is no suggestion that there was anything in the statement made which was contradictory, or from which different inferences might properly be drawn. And this court held that upon such a state of facts the expert might give his opinion.

The case of *Rex v. Leash*, 1 Macl. & R., 75, was a *nisi prius* case, and Justice Park held that it was competent to call a physician, who had heard the whole evidence, to give his opinion as to the sanity of the accused, and cited as authority for so holding the case of *Rex v. Wright*, Russ. & R., 456. By an examination of that case it will appear that the expert did not give his opinion upon the whole evidence, but he stated the facts upon which he formed his opinion as to the insanity of the accused. In consultation, "all the judges thought that in such case a witness of medical skill might be asked whether, in his judgment, such and such appearances were symptoms of insanity, and whether a long fast, followed by a draught of liquor, was likely to produce a paroxysm of that disorder in a person subject to it; and that by such questions the effect of his testimony in favor of the prisoner might be got at in an unexceptionable manner. · Several of the judges doubted whether the witness could be asked his opinion on the very point which the jury were to decide, viz., whether, from the other testimony given in the case, the act as to which the prisoner was charged was, in his opinion, an act of insanity."

. The case of *Heald v. Thing*, 45 Me., 392, did not touch the

question to be decided in this case. The principal question in that case was whether a medical expert could be permitted to give an opinion based upon his own examination in part, and in part upon the unsworn statements made by other persons in regard to the condition of the party as to sanity, and it was held he could not. The question involved in this case was not considered by the court.

The case of *Wright v. Hardy* should not, we think, be extended to cover a case like the one at bar. The record discloses that the evidence bearing upon the question of insanity was very voluminous, elicited by the examination of a large number of witnesses. The taking of the evidence occupied several days, and it cannot be said that it was all harmonious or entirely uncontradictory. To permit an expert in such case to give an opinion upon his memory of what the evidence was, and upon his conclusions as to what the evidence established as facts, would seem to be trenching upon the province of the jury and trying the case solely upon the opinions of the experts, founded upon their recollection and their opinion as to what the facts proved were. It does not help the case to say that the question is qualified by the statement made therein, " taking the testimony as true," because the expert must still trust to his memory of what the evidence was; and his inferences, deduced from facts sworn to by the witnesses, will necessarily control his judgment as to what in fact was the evidence in the case, and he will make up his mind from his understanding of what was sworn to by the witnesses. He may understand the evidence to be radically different from what the jurors or other persons hearing the testimony understand it.

It is almost impossible that all the testimony given in such case, coming from many witnesses and elicited by a long examination, should be entirely uncontradictory, or should be so plain that different inferences would not be drawn by different men. And to permit an expert to give his opinion,

which is to go to the jury as competent evidence, upon such a mass of testimony, without any explanation as to what state of facts such opinion is based upon, is in effect taking the case from the jury and deciding it upon the understanding of the witness as to what facts the evidence in the case established. We think the better rule is that the jury shall be clearly informed of the exact state of facts upon which the expert bases his opinion, and they certainly are not so informed when he gives his opinion upon his recollection and understanding of the whole evidence in the case, and this is especially so where the evidence is voluminous, is elicited from a large number of witnesses, and is not entirely harmonious and uncontradictory. The jury should in every case distinctly understand what are the exact facts upon which the expert bases his opinion. This is, perhaps, best accomplished by limiting him to answering hypothetical questions, and if it be proper in any case to permit an expert who has heard the testimony of a particular witness or of all the witnesses to give his opinion upon such evidence, and there be any conflict of evidence, or any doubt as to what the evidence is, he should be required to state fully his understanding as to what facts are established by such testimony. In such case the jury will be able to determine whether his opinion is based upon the evidence in the case as they understand it, or otherwise. Any other rule, it seems to us, leaves the jury entirely in the dark as to the most important fact, viz., whether the opinion is based upon the evidence as they understand it, or upon some other construction of the evidence not in their opinion justified by the testimony in the case.

This opinion is in accord with the opinion in the case of *Luning v. State*, 2 Pin., 215–220; it is supported by the following authorities cited by the learned counsel for the plaintiff in error: *Hunt v. Lowell G. L. Co.*, 8 Allen, 169; *Kempsey v. McGinniss*, 21 Mich., 123; *Woodbury v. Obear*,

7 Gray, 467; and is not in conflict with anything said in the case of *Wright v. Hardy*. In the case of *Kempsey v. Mc-Ginniss* the court say: " From these considerations it necessarily follows that the jury should know just what facts are assumed and enter into the collection or state of facts upon which the witnesses' opinions are based; otherwise they cannot know whether they ought to treat the opinion as evidence at all, since they can form no opinion whether such assumed facts, or the opinions based upon them, are true or false."

In *Hunt v. L. G. L. Co.*, the court say that there is no established form for questions to experts, and any question may be proper which will elicit their opinions as to matters of science or skill which are in controversy, and at the same time exclude their opinion as to the effect of the evidence in establishing controverted facts. "But where the facts stated are not complicated, and the evidence is not contradictory, and the terms of the question require the witness to assume that the facts stated are true, he is not required to draw a conclusion of fact." This latter rule was adopted by this court in the case of *Wright v. Hardy*, *supra*. The rule, as above limited, cannot be applied to questions of the sweeping character of the ones propounded to the expert in this case. We think the court erred in permitting Dr. Kempster to answer the questions objected to; and as the opinion of so eminent a man in his particular department of medical science would necessarily have great weight with the jury, it was important that they should know that such opinion was based upon the facts proved in the case as they understood them, and not as understood by the witness. We are unable to say, upon a consideration of the whole case that this evidence did not prejudice the accused.

The counsel for the plaintiff in error further insist that the judge erred in giving the following instructions to the jury upon the trial of the issue of insanity, viz.: " If the defend-

ant, at the time of the killing, was sufficiently sane to deliberate and premeditate a design to effect the death of Dr. Hogle, then he was sane within the spirit and meaning of the law applicable to this case, although he may have been, in truth, subject at the time to insane delusions on other subjects. . . . If he had sufficient power of mind and will to deliberate and premeditate a design to effect the death of Dr. Hogle, then you should find that he was sane." We are compelled to hold that these instructions, unexplained, were clearly erroneous. They set up as an absolute test of sanity the power to deliberate, premeditate, and design. They make the presence of sufficient intelligence in the party accused to form a design to do a criminal act conclusive evidence that he is sane, and subject to punishment if he executes such design. The presence of intelligence is by no means an absolute test of sanity. As was said by Justice Stowe, of Pennsylvania, in quoting from an opinion of Chief Justice Agnew, of that state: "Intelligence is not the only criterion, for it often exists in the madman in a high degree, making him shrewd, watchful, and capable of determining his purposes and selecting the means of accomplishment. Want of intelligence, therefore, is not the only defect to moderate the degree of offense; but with intelligence there may be an absence of power to determine properly the true nature and character of the act, its effects upon the subject, and the true responsibility of the action,— a power necessary to control the impulse of the mind and prevent the execution of the thought that possesses it."[1]

If the rule laid down by the learned circuit judge were an absolute test of sanity, then, although the defendant in this case had been under an insane delusion that it was his duty to kill the deceased, and such delusion was made clearly manifest from the evidence, yet if he proceeded to the exe-

---

[1] See *Ortwein v. Commonwealth,* 76 Pa. St., 421.— REP.

cution of this supposed duty in a way which showed that he had sufficient intelligence to plan and design to kill the deceased, that fact would be conclusive evidence of his sanity. It is probable that the learned judge did not intend, by the language of his instructions, to convey the idea above suggested to the jury as the basis of their verdict upon the question of the sanity of the accused; and yet it seems to us that the jury might well have so understood his language and found a verdict of sanity from the mere fact that the evidence showed that the accused had the intelligence to go about the killing of the deceased in a way which indicated a power on the part of the accused to deliberate, premeditate, and design to kill. The first of the above instructions excepted to was given by the learned judge as a separate and independent instruction. The second was given in the following connection: "If the evidence satisfies you that, at the time when he killed Dr. Hogle, the defendant was laboring under such a defect of reason from disease of the mind as not to know the nature and quality of the act he was doing; if he did not know when he killed Dr. Hogle that it was wrong to kill him, or if his mind was incapable, by reason of mental disease, to deliberate and premeditate the homicide,— then you should find that he was insane. But, on the other hand, if the evidence does not satisfy you that he was so laboring under a defect of reason as not to know the nature and quality of the act he was doing; if he did know it was wrong to kill Dr. Hogle; *if he had sufficient power of mind and will to deliberate and premeditate a design to effect the death of Dr. Hogle,— then you should find that he was sane.*" This last instruction cannot be said to be so qualified by what went before it as to make it entirely harmless, especially as the learned judge had submitted the same thing as an independent proposition upon which the jury were instructed they should find the sanity of the accused. · Having once instructed them that if they found the

accused sufficiently sane to deliberate and premeditate a design to effect the death of Dr. Hogle, then they should find him sane, without considering anything else, the jury would be quite likely to conclude that the charge above quoted, so far as it related to the same subject, was intended to be just as unqualified as in the first, and was not to be controlled by what went before it. We think the instructions excepted to were erroneous, and calculated to mislead the jury upon the issue of the sanity of the accused.

For the errors in permitting the expert, Dr. Kempster, to answer the questions objected to, and in the instructions to the jury on the trial of the issue of insanity, we are constrained to hold that the judgment must be reversed, although, upon the whole evidence, we are not disposed to hold that the verdict upon either issue was so clearly against the evidence as to justify this court in reversing the judgment for that cause.

Upon the issue of not guilty, the learned counsel for the plaintiff in error complain that the circuit judge erred in refusing an instruction asked upon the subject of the effect which the drunkenness of the defendant at the time of the killing might have upon the question whether the crime was murder in the first degree or in the second, or one of the degrees of manslaughter. We are inclined to think the instruction as asked by the defendant was properly refused, and that the general charge was sufficient upon that point. They also complain that the court, upon their request, refused the following instruction: " If the jury find that the killing of Dr. Hogle by the defendant was done by the perpetration of an act imminently dangerous to others, and evincing a depraved mind, regardless of human life, without any premeditated design to effect the death of the person killed, or of any human being, the jury may find the defendant guilty of murder in the second degree."

This instruction was asked by the defendant on the ground

that under the evidence the jury would have been justified in finding the accused guilty of murder in the second degree; that, upon the evidence of the drunkenness of the accused, the jury would have been justified in finding that the act was not a premeditated one, but the reckless and unpremeditated act of a drunken man. My own opinion is that, in every case where the accused is on trial for murder, and the evidence is susceptible of a construction which would justify the jury in finding the accused guilty of murder in any of the degrees, or some one of the degrees of manslaughter, the circuit court should, upon request, instruct the jury upon that subject by calling their attention to the law defining the degrees of murder or manslaughter to which the evidence in the case might reasonably be applied. Whether the refusal of the court to give such instruction in a proper case, and charging the jury that they must convict of the higher crime or acquit, would be error, we do not decide. *Dickerson v. State,* 48 Wis., 288–294.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial. The warden of the state prison will surrender the plaintiff in error to the sheriff of La Crosse county, who will hold him in custody until he shall be discharged, or his custody changed by due course of law.