[Crim. No. 1923. Second Appellate District, Division Two.—June 27, 1930.]

THE PEOPLE, Respondent, v. HERBERT N. SELPH, Appellant.

Cooper & Collings for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

THOMPSON (IRA F.), J.—This is an appeal by the defendant from a judgment sentencing him to life imprisonment upon a verdict finding him guilty of murder in the first degree and from an order denying his motion for a new trial.

There is and can be no question raised concerning the commission of the homicide by him. On the morning of September 3, 1929, the appellant was seen to chase the decedent, Mrs. Georgia Greggins Bowman out of the house in which they were living together, firing at her with a revolver. She ran out towards her automobile, parked in front of the house, but fell to the ground just before reaching it. After she had fallen the appellant stood over her and continued to fire shots into the body.

However, the appellant contends that the evidence is insufficient to support the verdict of the jury because it fails to show that the homicide was "malicious, designed or premeditated." He also asserts that the court committed error in precluding him from introducing evidence relative to the intoxicated condition of the appellant for a longer period than three weeks prior to the killing.

The arguments thus advanced render it necessary for us to recite the testimony introduced by the prosecution upon the issue involved, noting in this particular that the defendant entered two pleas in the court below, the one that he was not guilty and the other that he was not guilty by reason of insanity.

Some time during January, 1929, the appellant went to live with Mrs. Bowman at the place where the tragedy occurred. On April 19, 1929, the decedent and appellant entered into a written agreement whereby they undertook

to establish a rabbitry on the same property, she to furnish the money to buy the stock, and room and board to the appellant, and he to perform the labor necessary to construct the hutches, and to breed, raise and market the increase. The proceeds were to be evenly divided. A third party was named in and signed the agreement as lessor, but, so far as the document discloses, was to receive no money. The agreement contemplated the keeping of 1,000 does, but after they had secured about 115 the decedent sold them without asking the consent of appellant and kept the proceeds. The appellant demanded his share, according to his statement, approximating $20, together with some money he said Mrs. Bowman had taken out of his pocket. These demands she refused, telling him to pack up and get out and that after he had moved he could come back and get the money. The appellant told the officers, however, that such was her method of getting the money, and that she had made several men love her and had taken money from them. He confessed his infatuation with her and said that on the morning of the homicide at about 8 o'clock some man had come to the house with her who was going to step into his shoes. To the arresting officers the appellant made the statement when asked why he had killed her that she had made him do it. It is made to appear from his own statement and from the testimony of another witness that they had been quarreling for two or three weeks. On the morning of the tragedy the decedent renewed her demands that he leave the place and, according to appellant, kicked the door to his room open for the purpose of inquiring if he was going.

With respect to the state of intoxication of the appellant at the time of the shooting, all of the witnesses who talked with him agree that they smelled alcohol on his breath, but there is ample evidence to support the implied finding of the jury that he was not in such a state of inebriety as to be without the power of forming an intent. There are those who testified that he did not stagger as he walked, there are those who said that he talked coherently, taking plenty of time to answer the questions with which he was plied and declining to answer questions at times; there is testimony that he was able to sit down and get up without assistance; that he got into the automobile without aid ex-

cept the opening of the door, which act he could not perform because he was handcuffed; and other evidence that he appeared alert.

Under the circumstances we think the case of *People* v. *Kelley,* 208 Cal. 387 [281 Pac. 609], relied upon by the appellant, is not applicable. Here the jury was authorized in drawing the deduction that the defendant, actuated by ill-will arising from jealousy and his belief that the decedent was withholding from him money to which he was rightfully entitled and that it was her practice to inveigle men into positions where she could profit financially, determined that he would have revenge and that she would no longer have opportunity to make herself agreeable to other members of his sex. Believing such to be the motive of the appellant and also believing, as the evidence justified them in doing, that the appellant was capable of forming a deliberate intent to murder, the jury was acting within its province in returning the verdict complained of.

 We now turn our attention to the claim that the court erred in limiting testimony concerning the intoxication of the defendant to a period of three weeks prior to the commission of the offense. It will be borne in mind that the issue of insanity was tried separately under the plea of not guilty by reason of insanity and therefore the proffered testimony, introduced in support of the general plea of not guilty, was relevant only to the state of intoxication at the time of the commission of the crime in order to assist in determining the intent with which it was committed. (*People* v. *Malone,* 205 Cal. 29 [269 Pac. 628, 270 Pac. 196].) Let us put the proposition in a different way. Under the authority of *People* v. *Troche,* 206 Cal. 35 [273 Pac. 767, 772], *People* v. *Leong Fook,* 206 Cal. 64 [273 Pac. 779], and *People* v. *Phillips,* 102 Cal. App. 705 [283 Pac. 821], we are forced to the conclusion that while the insanity of the defendant is not in issue under the general plea, yet this does not preclude the introduction of evidence tending to establish the mental condition of the accused at the time the offense was committed for the purpose of showing a lack of criminal intent, malice or premeditation, such evidence to be also considered by the jury, as it undoubtedly was in the instant case, in the exercise of its discretion in fixing the punishment at life imprisonment

or the extreme penalty. It will be observed, however, that this testimony has to do with the mental condition of the defendant at the time of the commission of the offense, or to put it in the language of *People* v. *Troche, supra:* "(T)he only evidence admissible for the purpose of enabling the jury to determine whether the death penalty or life imprisonment should be imposed in the event the defendant should be found guilty of murder in the first degree was the evidence which the court did admit, and which concerned 'the circumstances connected with the offense.' (*People* v. *Golsh,* 63 Cal. App. 609, 613 et seq. [219 Pac. 456]; see, also, *People* v. *Witt,* 170 Cal. 104, 110 [148 Pac. 928].) The insanity of a defendant cannot be used for the purpose of reducing his crime from murder in the first degree to murder in the second degree. If responsible at all in this respect, he is responsible in the same degree as a sane man, and if he is not responsible at all he is entitled to an acquittal in both degrees."

In the instant case it is manifest that the action of the trial court in permitting the defendant, on the trial under the general plea, to show his intoxicated condition covering a period of three weeks prior to the time of the commission of the crime fully protected his right to show the circumstances under which the homicide was committed.

Judgment and order affirmed.

Works, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 12, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 26, 1930.