# No. 13,135.

## INGLES *v.* THE PEOPLE.
### (22 P. [2d] 1109)

Decided April 17, 1933. Original opinion adhered to June 12, 1933.

520

Mr. S. HARRISON WHITE, Mr. WILLIAM O. PERRY, for plaintiff in error.

Mr. CLARENCE L. IRELAND, Attorney General, Mr. WALLACE S. PORTH, Assistant, for the people.

*En Banc.*

MR. JUSTICE BUTLER delivered the opinion of the court.

ALEXANDER Ingles, alias Alexander English, hereinafter called the defendant, was charged with murder, pleaded not guilty by reason of insanity at the time of the alleged commission of the crime, was convicted of murder of the first degree, and was sentenced to death. On writ of error, we reversed the judgment, and remanded the cause for a new trial. *Ingles v. People,* 90 Colo. 51, 6 P. (2d) 455. Thereupon, by leave of the trial court, the defendant withdrew his plea of not guilty by reason of insanity at the time of the alleged commission of the crime, was re-arraigned, entered a general plea of not guilty, was convicted again of murder of the first degree, and again sentenced to death.

At the trial, the defendant sought to introduce evidence tending to show that at the time of the homicide he was insane or otherwise mentally deranged. The court sustained the district attorney's objection to the offer, holding that under the act of 1927, concerning pleas of insanity in criminal cases (S. L. 1927, c. 90, p. 296, et seq.) such evidence was not admissible, the defendant having withdrawn his former plea and having entered, in lieu thereof, a general plea of not guilty.

That act provides as follows:

"Section 1. If one of the defenses of the defendant be insanity, said defense must be pleaded orally, either by defendant or by counsel for defendant as a specification to the plea of 'not guilty' in the form 'Not guilty by reason of insanity at the time of the alleged commission of the crime,' or 'Not guilty by reason of insanity since the time of the alleged commission of the crime,' or 'Not guilty by reason of insanity at the time of the alleged commission of the crime and since.'

"Section 2. Upon the making of any such plea of insanity, the judge shall forthwith commit the defendant to the Colorado Psychopathic Hospital at Denver or to the State Hospital at Pueblo where the defendant shall remain under observation for such time as the court may direct, not exceeding one month. The judge may also appoint a commission of one or more physicians, specialists in mental diseases, to examine the defendant during said period, and the court may call and examine said physicians as witnesses at the trial. Either the state or the defendant or both may call said physician or physicians as witnesses but this shall not preclude the state or defendant from using other physicians.

"Section 3. If the plea is 'Not guilty by reason of insanity since the time of the alleged commission of the crime,' the case shall be set down for trial on the issue of insanity alone, with no reference to the crime. If the plea be 'Not guilty by reason of insanity at the time of the alleged commission of the crime,' or 'Not guilty by

reason of insanity at the time of the alleged commission of the crime and since,' after the period of observation, the case, in the discretion of the court, may be either set for trial on the insanity issue alone and the defendant committed to the Colorado State Hospital at Pueblo or held for trial, dependent on the verdict of the jury, or be tried on the main case.

"Section 4. If the plea is 'Not guilty by reason of insanity at the time of the alleged commission of the crime,' or 'Not guilty by reason of insanity at the time of the alleged commission of the crime and since,' in addition to the other forms of verdict, the jury shall be given a form with the words 'Not guilty by reason of insanity.' If said verdict is rendered, the defendant shall be confined in the Colorado State Hospital at Pueblo under the laws governing that institution."

1. It is said that the act in question violates three sections of article 2 of the state Constitution; namely, section 23, which provides that "The right of trial by jury shall remain inviolate in criminal cases"; section 25, which provides "That no person shall be deprived of life, liberty or property, without due process of law"; and section 18, which provides "That no person shall be compelled to testify against himself in a criminal case."

One who is insane when he commits an act prohibited by law cannot be held guilty of a crime. A statute providing that insanity shall be no defense to a criminal charge would be unconstitutional. *State v. Strasburg*, 60 Wash. 106, 110 Pac. 1020. One accused of crime is entitled to raise and have a jury pass upon the question of whether he was sane or insane when he committed the act with which he is charged. At some stage of the proceedings he must be given an opportunity to raise that question. Before the act of 1927, the question could be raised under a general plea of not guilty. In order to avoid or lessen certain abuses that were believed to exist under that practice, the Legislature, by the act in question, changed the method of raising the question of insan-

ity, but left to the defendant all the substantial rights he formerly enjoyed. Now, as formerly, he can raise the question of insanity, and have that question passed upon by a jury of twelve men. Now, as formerly, when the question is properly raised, the burden is upon the people to prove beyond a reasonable doubt that the defendant, when he committed the act charged, was sane. Now, as formerly, if the evidence raises in the minds of the jury a reasonable doubt of the defendant's sanity at that time, they must find the defendant not guilty of the crime charged. The substance of the defendant's right to a jury trial on the question of insanity has been preserved; the procedure only has been changed. The constitutional provision concerning the inviolability of jury trials does not prohibit the Legislature from changing the method of raising the queston of insanity. Nor does the requirement that in order to raise the question of insanity, the defendant must plead it in the specified manner, offend against the due process clause of the Constitution. *People v. Hickman,* 204 Cal. 470, 268 Pac. 909; *People v. Troche,* 206 Cal. 35, 273 Pac. 767; *People v. Davis,* 94 Cal. App. 192, 270 Pac. 715; *Bennett v. State,* 57 Wis. 69, 14 N. W. 912; *State v. Toon,* 172 La. 631, 135 So. 7; *Perry v. State,* 87 Ala. 30, 6 So. 425.

"The purpose of the act is plainly to require the defense of insanity to be tried only under a special plea, to require this plea to be interposed at the time of arraignment, and to require a special verdict on this issue. This defense can not now be introduced under the plea of 'not guilty,' as it formerly could be." *Perry v. State, supra.* And see the other cases cited above.

2. It is said that the act of 1927 deprived the defendant of due process of law, for the reason that it denied him the right to raise the issue of insanity at the time of the homicide, except upon condition that he first subject himself, even though sane at the time of entering his plea, to incarceration for a prescribed period of time in a hospital before trial, there to be observed and exam-

ined for the purpose of getting evidence either for or against himself; and that the act thus compelled the defendant to furnish evidence tending to incriminate himself.

(a) A person not accused of a crime, but alleged to be insane, may be taken into custody and temporarily restrained of his liberty and subjected to professional observation pending a judicial determination of his mental condition. C. L. §550, et seq. Even under the old law, one accused of crime and whose sanity was questioned was subject to confinement and observation.

(b) But it is said that a person who is insane at the time of the homicide may recover his sanity and be sane at the time of pleading. It is suggested that such was the situation in the case at bar, and that in such a case the right to confine a person temporarily in a hospital for observation and examination to ascertain his mental condition does not exist. A person accused of crime may be confined in jail pending his trial, and while there he may be observed and examined to ascertain his mental condition. Where he claims that he was insane at the time he committed the act with which he is charged, temporarily transferring him to a hospital, where he can be observed and examined under conditions more favorable than those existing in jail, does not deprive him of due process of law.

(c) Such incarceration and examination does not offend against section 18, article 2, of the state Constitution, providing that no person shall be compelled to testify against himself in a criminal case. *Jessner v. State,* 202 Wis. 184, 231 N. W. 634.

(d) It is said that during such confinement in the hospital under the act of 1927, a person accused of crime would be denied the right to consult counsel, and that to require him to place himself in such a situation as a condition to pleading not guilty by reason of insanity at the time of the homicide would deprive him of due process of law. But that act contains no such provision;

and the right of any person restrained of his liberty, for any cause whatever, to consult counsel, except where there is imminent danger of escape, is amply secured by section 7162, Compiled Laws.

 3. Where a defendant is afforded the opportunity, as he is under the act of 1927, to raise the question of his irresponsibility by reason of insanity at the time the act was committed, chooses not to do so but interposes only the general plea of not guilty, he cannot, under such plea, claim irresponsibility by reason of insanity, and demand an acquittal by reason thereof. But is he entitled to introduce evidence of insanity, or mental derangement short of insanity, for the purpose, not of an acquittal, but of reducing the grade of the crime from murder of the first degree to murder of the second degree? Some courts hold that he cannot do so. *People v. Troche, supra.* We believe that the weight of authority and the better reason are to the contrary.

 Section 6665, Compiled Laws, provides, inter alia: "All murder which shall be perpetrated * * * by any kind of wilful, deliberate and premeditated killing * * * shall be deemed murder of the first degree, and all other kinds of murder shall be deemed murder of the second degree." The information charges that Ingles "did * * * wilfully, deliberately, and of his premeditated malice aforethought kill and murder," etc. To constitute murder of the first degree, the malice must be express malice. Express malice is the deliberate intention unlawfully to take away the life of a fellow creature. To constitute murder of the second degree, there must be implied malice, as distinguished from express malice, and there must be an absence of deliberation and premeditation.

To be guilty of murder of the first degree a person must not only be sane, but in killing he must have acted wilfully, deliberately and with premeditation. Whether he so acted is for the jury to determine after a consideration of all the facts and circumstances in evidence, in-

cluding those affecting his mental condition at the time. A defendant, by reason of his failure to raise the issue of insanity in the manner required by the act of 1927, may be conclusively presumed to be sane in the sense that he is responsible and amenable to the law, and still, by reason of some mental derangement—insanity or otherwise —may not have acted with express malice, deliberation or premeditation; and in such case he would not be guilty of first-degree murder; second-degree murder being the highest degree of homicide of which he could be convicted.

Thus, section 6642, Compiled Laws, provides, in effect, that voluntary drunkenness shall not be an excuse for crime. Though drunk, a man is to be held responsible and amenable to the law, if his drunkenness is voluntary; nevertheless, drunkenness, as a fact affecting the control of the mind, is proper for the consideration of the jury in determining whether the accused was capable of entertaining the positive and particular intent requisite to make out the crime of first-degree murder. *Brennan v. People,* 37 Colo. 256, 86 Pac. 79. In that case the court instructed the jury, in the language of the statute, that drunkenness shall not be an excuse for crime, and it was held reversible error not to give an instruction that drunkenness in such case might be considered by the jury for the purpose of determining whether the accused was capable of forming a wilful, deliberate and premeditated design to take life. The all-important consideration is the mental condition, and such condition is equally important whether it is due to drunkenness or to some other cause. In *Brennan v. People, supra,* we said: ''The degree of the offense, therefore, depends entirely upon the question whether the killing was wilful, deliberate and premeditated, and upon that question it becomes a material and necessary subject of consideration by the jury whether the accused is in such condition of mind by reason of drunkenness *or otherwise* as to be capable of deliberation and premeditation. This, we think, has been

the uniform ruling, not only of the courts of all states having statutes similar to our own, but also of the supreme court of the United States." And we quoted with approval the following statement by Mr. Justice Gray, in *Hopt v. People,* 104 U. S. 631, 26 L. Ed. 873: "But when a statute establishing different degrees of murder requires deliberate premeditation in order to constitute murder in the first degree, the question whether the accused is in such a condition of mind, by reason of drunkenness *or otherwise,* as to be capable of deliberate premeditation, necessarily becomes a material subject of consideration by the jury." And see, *People v. Malone,* 205 Cal. 29, 269 Pac. 628; *People v. Selph,* 106 Cal. App. 704, 289 Pac. 918.

In Wisconsin a statute requires the question of insanity to be raised by a special plea. When such plea is interposed with the plea of not guilty, the issue of insanity must be tried first. In *Hempton v. State,* 111 Wis. 127, 86 N. W. 596, the defendant interposed both pleas. On the trial of the issue of insanity, the defendant was found sane. At the trial of the issue raised by the general plea of not guilty, the defendant offered evidence of a disordered mind as bearing upon the degree of the homicide. The trial court ruled that the verdict on the special issue was conclusive as to every phase of insanity, and that no evidence of the mental condition of the accused at the time of, or before, the commission of the alleged offense was admissible, except that which existed at the time of the offense, "caused by intoxicating liquor." Holding that exception to be unwarranted, the Supreme Court said: "No doubt the statute permitting the special plea of insanity to be interposed with the plea of not guilty, and the trial of the issue upon the special plea to take place first, and requiring the jury, in deciding it, to render a verdict of not guilty if satisfied that the accused was insane, in the legal sense, at the time of the commission of the alleged offense, or they entertain a reasonable doubt on the question, contemplates an entire

separation of that subject from the issue raised by the plea of not guilty, and that the trial and final disposition of the special issue by the verdict shall preclude any further inquiry in respect thereto. But that goes only to the question of legal insanity excusing the accused from all responsibility for his acts; not to that lesser degree of disordered intellect rendering a person incapable of forming a design to kill, and bearing on the grade of his criminality. The learned trial court erred in ruling that no abnormal mental condition was material upon the general issue of not guilty, other than that produced and existing at the time of the alleged homicide by the use of intoxicating liquor. The same rule that permits proof of intoxication as bearing on the question of malice, permits evidence of a disordered mental condition, however produced. The important circumstance is the disordered intellect, not the means by which it was produced.'' And the court quoted with approval the language of Mr. Justice Gray, in *Hopt v. People, supra,* that was quoted by this court in *Brennan v. People, supra.*

4. There is another reason why evidence of the defendant's mental condition at the time of the homicide was admissible. When a defendant is found guilty of murder of the first degree, the jury "shall fix the penalty at death or imprisonment for life.'' C. L. §6665. In determining whether the penalty shall be death or life imprisonment, the jury act in the exercise of a sound discretion. It is conceivable that the mental condition of a defendant at the time of the homicide may be such as to induce a jury, in the exercise of their discretion, to fix the lesser penalty. In California, where a defendant is not permitted, at the trial of the issue raised by the general plea of not guilty, to introduce evidence of mental derangement for the purpose of lessening the grade of the crime, it is held that such evidence may be introduced to enable the jury to determine, in the exercise of their discretion, whether to fix the penalty at death or at imprisonment for life. *People v. Selph, supra.* And see

*People v. Malone, supra,* and *People v. Dias,* 210 Cal. 495, 292 Pac. 459.

5. There is still another reason why the offered testimony should have been admitted. The people introduced in evidence two confessions, one made one day after the homicide, the other made two days after the homicide. When a confession is introduced in evidence, the defendant has the right to introduce evidence of all the circumstances surrounding the making of the confession, in order that they may be taken into consideration by the jury in weighing the evidence. His mental condition is a material circumstance. For example, a defendant may introduce evidence that he was insane, or was mentally deranged though not insane, or was intoxicated, or for any other reason was not in full possession of his faculties. 1 R. C. L. pp. 562, 563; note, 18 L. R. A. (N. S.) 788; note, 50 L. R. A. (N. S.) 1082; note, 74 A. L. R. 1102. The confessions, as we have seen, were made within a few hours after the homicide, and the offered evidence related to the defendant's mental condition covering the time the confessions were made, as well as the time of the homicide.

6. The defendant assigns error to the court's refusal to instruct on second-degree murder. In view of what we have said about the offered evidence concerning the defendant's mental condition, the question now presented is not likely to arise at the next trial.

7. Another assignment is that the court refused the defendant's request for instructions on voluntary and involuntary manslaughter. In this respect the court did not err. Under the evidence, manslaughter was not involved.

This case has been tried twice. It is unfortunate that it must be tried a third time; but the error in excluding the offered evidence concerning the defendant's mental condition was so seriously prejudicial to the substantial rights of the defendant, that the only course open to us is to order a new trial.

530

The record suggests, but does not present for decision, the question of the constitutionality of that portion of the act that seems to vest in the district court discretion to try the cause separately on the defense of insanity, and the constitutionality of that portion of the act that permits the court, if defendant be found not guilty by reason of insanity at the time of the alleged commission of the crime, to commit him to the Colorado State Hospital without a hearing on the question of his sanity at the time of the trial. Without passing upon these questions at this time, we suggest that in the further proceedings herein, if the defendant changes his plea, the first of these questions may be obviated by hearing all defenses in a single trial, and the second by a separate hearing on the question of insanity.

The judgment is reversed, and the cause is remanded for a new trial.

Mr. Justice Bouck concurs specially.

Mr. Chief Justice Adams dissents.

Mr. Justice Bouck, specially concurring.

In the reversal of this case I concur on the ground that it was reversible error to exclude evidence offered on behalf of the defendant which tended to show his insanity or mental derangement at the time of the homicide, as bearing upon the issue of criminal intent. However, I do not agree with the opinion of Mr. Justice Butler in its entirety. As is there rightly stated, the present review does not involve the constitutionality of that part of our insanity plea act (S. L. '27, c. 90, p. 296) which apparently confers upon the district court a discretionary power to try the insanity defense separately from the main case (Id. p. 297, §3), nor the constitutionality of that part which prescribes confinement in the state hospital for a defendant acquitted because of insanity existing when the alleged crime was committed (Id., p. 297, §4). Under the record in this case I regard practically no part of the

aforesaid act as now involved, for the reason that the plea here was "not guilty," and thereunder the provisions concerning insanity pleas do not apply.

Our act undoubtedly presents several points of real difficulty. These are likely to arise some time in our criminal trials but have not yet done so. No statute in any other state is exactly like ours; indeed, most of these statutes bear but a slight resemblance to our own. As a necessary result, the reasoning employed by courts of our sister states on the subject of the particular legislation before them, with varying facts and different constitutional rights, is, I fear, almost wholly fallacious if applied as a theoretical matter to our local criminal procedure, which after all must be judged in the light of the Colorado Constitution and the deliberate interpretation thereof in a proper case. This court has hitherto restricted its decisions in a remarkable degree to actual controversies, not imaginary ones; to concrete cases rather than abstract problems. I have full confidence that it will continue to do so.

What, then, is here decided? First, I take it, the court has decided that insanity, in order to obtain consideration as a defense, must be specially pleaded according to section 1 of our act. Early notice of that defense is conducive to efficiency and fairness. In addition, there is the practical and wholesome suggestion of the court that, if the defendant changes his plea so as to include the insanity defense, the trial court should exercise its discretion by submitting such issue along with the main case to a single jury. Another helpful suggestion, coupled with the first, properly points the way to a similarly safe choice of procedure.

In my opinion it is not necessary or desirable for us to decide, on the present record, whether section 2 of the act violates the constitutional guaranty that no criminal defendant shall be compelled to testify against himself. Colo. Const., art. II, §18. This question may well become important if a defendant should plead insanity at

the time of the alleged commission of the crime. Should this question arise on the next trial, it will doubtless be properly presented and disposed of after a more thorough consideration than amid the present exacting work of the court could be given a situation that does not now exist.