DANE COUNTY,
Plaintiff-Respondent,

v.

Kenneth R. McGREW,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2003AP1794. Oral argument March 10, 2005.
—Decided July 19, 2005.*

## 2005 WI 130

(Also reported in 699 N.W.2d 890.)

For the defendant-appellant-petitioner there were briefs by *Rex R. Anderegg* and *Anderegg & Mutschler, LLP,* Milwaukee, and oral argument by *Rex Anderegg.*

For the plaintiff-respondent there was a brief and oral argument by *Jason J. Hanson,* assistant district attorney.

A brief was filed by the State of Wisconsin by *Aaron R. O'Neil,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. DAVID T. PROSSER, J. This is a review of an unpublished decision of the court of appeals, *Dane County v. McGrew,* No. 2003AP1794, unpublished slip op. (Wis. Ct. App. Mar. 25, 2004), affirming a judgment and order of the circuit court for Dane County, C. William Foust, Judge. We granted review to determine whether Wis. Stat. § 345.43 (2001–02),[1] which mandates six-person juries in civil forfeiture trials, is unconstitutional in Dane County's prosecution of Kenneth McGrew (McGrew) for speeding pursuant to Dane County Ordinance § 69.01 and Wis. Stat. § 346.57(4)(h).

¶ 2. McGrew argues that under Article I, § 5 of the Wisconsin Constitution, which provides that the right of trial by jury "shall remain inviolate," he is entitled to a jury of 12, and therefore Wis. Stat. § 345.43 is unconstitutional.

¶ 3. Applying the test we set forth in *Village Food & Liquor Mart v. H&S Petroleum, Inc.,* 2002 WI 92, 254

---

[1] All subsequent references to the Wisconsin Statutes are to the 2001–02 edition unless otherwise indicated.

Wis. 2d 478, 647 N.W.2d 177, we conclude that the cause of action created by Wis. Stat. § 346.57(4)(h) did not exist at common law at the time of the adoption of the Wisconsin Constitution in 1848. We therefore conclude that McGrew has no constitutional right to a jury trial.[2]

## I. BACKGROUND

¶ 4. On May 2, 2002, Dane County Deputy Sheriff Eric Novotny stopped McGrew for speeding. Novotny later testified that he "paced" McGrew's vehicle at a speed of approximately 80 miles per hour (MPH) in a 55 MPH zone. Novotny issued McGrew a citation in the amount of $175.80 with an assessment of six demerit "points"[3] to McGrew's driver's license. The citation accused McGrew of exceeding the applicable speed limit by 24 MPH, in violation of Dane County ordinance 69.01,[4] which adopts all the state traffic laws. The particular statute at issue is Wis. Stat. § 346.57(4)(h).[5]

---

[2] However, the four concurring and dissenting justices, although split on the number of jurors to which McGrew is entitled, conclude that McGrew has a constitutional right to a jury trial and form a majority on that issue. *See* Justice Bradley's concurrence, ¶ 70 n.1.

[3] A motorist assessed with 12 or more demerit points in any 12–month period suffers the penalty of driver's license suspension. Wis. Admin. Code § Trans. 101.04(3) (Jan. 2002).

[4] "The statutory provisions prescribing and defining the proper handling, equipping and registration of motor vehicles . . . contained in chapters 341 through 348 . . . are hereby adopted by reference and made a part of this section to the full extent permitted by . . . the Wisconsin Statutes." Dane County Ord. § 69.01.

[5] " . . . [N]o person shall drive a vehicle at a speed in excess of the following limits unless different limits are indicated by official traffic signs:

McGrew decided to contest the citation in Dane County Circuit Court. McGrew fought the citation tooth and nail, fully exercising his rights. He filed an extensive discovery request, asking for 25 items including Deputy Novotny's training records, various information about Novotny's vehicle, and the traffic engineering study establishing the speed limit on the stretch of highway on which Novotny stopped him. He also filed several pretrial motions, and demanded a trial by jury under Wis. Stat. § 345.43[6]:

> The Defendant hereby motions the court for a jury of 12, as opposed to six persons. Though the appeals court, in an unpublished opinion, has ruled against the right to a jury of 12 persons in forfeiture cases, this issue has not been settled by the Supreme Court. The Defendant raises this motion for the sake of preserving the record should it be necessary to appeal to the Supreme Court.

McGrew submitted $36 with his request, an amount sufficient to cover a six-person jury.[7]

---

. . . .

(h) In the absence of any other fixed limits or the posting of limits as required or authorized by law, 55 miles per hour." Wis. Stat. § 346.57(4)(h).

[6] If . . . either party files a written demand for a jury trial within 10 days after the defendant enters a plea of not guilty under s. 345.34 and immediately pays the fee prescribed in s. 814.61(4), the court shall place the case on the jury calendar of the circuit court. The number of jurors shall be 6. If no party demands a trial by jury, the right to trial by jury is permanently waived.

Wis. Stat. § 345.43(1).

[7] For a jury in all civil actions . . . a nonrefundable fee of $6 per juror demanded to hear the case to be paid by the party

¶ 5. On June 18, 2002, the County moved the court for permission to amend the citation to reflect a charge of exceeding the speed limit by 25 MPH instead of 24 MPH. The court allowed this amendment over the defendant's objection. According to McGrew, the amendment "dramatically raised the stakes for fighting the ticket," because it subjected McGrew to a potential 15–day suspension of his operating license. *See* Wis. Stat. § 343.30(1n) ("A court shall suspend the operating privilege of a person for a period of 15 days upon the person's conviction by the court of exceeding the applicable speed limit . . . by 25 or more miles per hour.").

¶ 6. On September 27, 2002, the court held a motion hearing to consider McGrew's request. The following exchange occurred regarding McGrew's request for a 12–person jury:

> THE COURT: . . . [Y]ou want a jury of 12 rather than six.
>
> MR. MCGREW: The—I don't know that Your Honor could even rule in my favor on that matter, because the appeals court in our area does not believe you[] hav[e] a right to a 12–person jury. I raise that only for the sake of establishing it in case I [go to] the Supreme Court later on. I'm only [p]reserving that for the record, Your Honor.
>
> THE COURT: Yeah. It seems to me that the—we went in misdemeanors from 12 to six and that was ruled unconstitutional. The Legislature then went from six to 12 but left the forfeiture juries at six. And I don't think there is the history of jury size importance in

---

demanding a jury within the time permitted to demand a jury trial. If the jury fee is not paid, no jury may be called in the action, and the action may be tried to the court without a jury.

Wis. Stat. § 814.61(4).

forfeiture cases that there is in criminal cases. And I think the Legislature can do as they wish.

And so, your record is preserved, but your motion is denied.

¶ 7. After a one-day trial held May 20, 2003, a six-person jury convicted McGrew of violating the ordinance. The court entered judgment on the verdict in the amount of a $200 forfeiture plus costs, and a 15–day suspension of McGrew's operating license. McGrew appealed on several grounds, and the court of appeals affirmed. *Dane County v. McGrew,* No. 2003AP1794, unpublished slip op. (Wis. Ct. App. Mar. 25, 2004). The court of appeals rejected all of McGrew's claims of error, but did not specifically address McGrew's claim that he was entitled to a 12–person jury, because "McGrew tacitly admits we have no power to address this topic, and he states he is raising the issue '[s]olely to preserve [it] for a possible petition for review to the Wisconsin Supreme Court.' " *Id.,* ¶ 29. We granted McGrew's petition for review.

## II. STANDARD OF REVIEW

■

¶ 8. McGrew argues that Wis. Stat. § 345.43 violates the constitutional guarantee that the right of trial by jury "shall remain inviolate" because it provides that "[t]he number of jurors shall be 6" in civil forfeiture actions. Any attack on the constitutionality of a statute presents a question of law subject to de novo review. *Czapinski v. St. Francis Hosp.,* 2000 WI 80, ¶ 12, 236 Wis. 2d 316, 613 N.W.2d 120. The party challenging the statute bears the heavy burden of proving that the statute is unconstitutional beyond a reasonable doubt. *State v. Laxton,* 2002 WI 82, ¶ 8, 254 Wis. 2d 185, 647

N.W.2d 784. This court will presume that the statute is constitutional, *id.,* indulge "every presumption to sustain the law if at all possible," *State v. Cole,* 2003 WI 112, ¶ 11, 264 Wis. 2d 520, 665 N.W.2d 328, and resolve any doubt in favor of the constitutionality of the statute. *See Dane County DHS v. P.P.,* 2005 WI 32, ¶ 17, 279 Wis. 2d 169, 694 N.W.2d 344. We are not concerned with "the wisdom of the legislative enactment," only with whether the statute clearly contravenes some constitutional provision. *State ex rel. Warren v. Nusbaum,* 59 Wis. 2d 391, 413, 208 N.W.2d 780 (1973).

## III. ANALYSIS

¶ 9. McGrew challenges the constitutionality of Wis. Stat. § 345.43(1), which provides that when a jury is demanded in traffic cases, "[t]he number of jurors shall be 6."

¶ 10. McGrew concedes that in light of *Williams v. Florida,* 399 U.S. 78 (1970), the United States Constitution does not afford him the right to a 12-person jury. The Supreme Court stated, "We hold that the 12-man panel is not a necessary ingredient of 'trial by jury' . . . ." *Id.* at 86. Thus, we restrict our analysis to whether the Wisconsin Constitution guarantees such a right.

¶ 11. Two potential sections of the state constitution are implicated: Article I, § 5, which preserves the right of trial by jury, and Article I, § 7, which assures certain rights to criminal defendants. McGrew concedes that this is a civil action. *See City of Waukesha v. Schessler,* 239 Wis. 82, 85–86, 300 N.W. 498 (1941) ("By no process of reasoning . . . can any action except one prosecuted by the state be considered a criminal action.

. . . [A] multitude of cases might be cited wherein it is directly held that actions under ordinances are civil actions to recover forfeitures."). At all relevant times, an ordinance violation for speeding has been so classified.[8]

¶ 12. Accordingly, McGrew's right (or lack thereof) to a 12–person jury trial will rise or fall based on Article I, § 5 of the Wisconsin Constitution,[9] which preserves "inviolate" the right to trial by jury:

> The right of trial by jury *shall remain inviolate,* and shall extend to all cases at law without regard to the amount in controversy; but a jury trial may be waived

---

[8] Currently, a person who violates Wis. Stat. § 346.57 is subject to a civil forfeiture and a possible license suspension. Wis. Stat. §§ 343.30(1n), 346.60(2)-(3m); *see also* Wis. Stat. § 939.12 ("A crime is conduct which is prohibited by state law and punishable by fine or imprisonment or both. Conduct punishable only by a forfeiture is not a crime."). McGrew seeks to analogize this forfeiture to a violation of the 1849 "laws of the road." In the 1849 edition of the statutes, "crimes" were codified in Chapters 132 through 141, while the laws of the road were set out in Chapter 33. Citizens violating the law of the road "forfeit[ed] a sum not exceeding twenty dollars." Wis. Stat. ch. 33, § 2 (1849).

It is true that in 1957, when the legislature created the "Vehicle Code" and included a 55 MPH speed limit, violation of the statute was punishable by fine or imprisonment, and thus qualified as a crime. *See* Wis. Stat. §§ 346.60(2), 939.12 (1959). However, as McGrew conceded at oral argument, the temporary criminal status of the action does not affect our analysis comparing the action as it is known today with actions known at the time of the Constitution's enactment.

[9] In *State v. Graf,* 72 Wis. 2d 179, 184, 240 N.W.2d 387 (1976), this court recognized that Article I, § 5 applies to civil forfeiture actions. *See also State ex rel. Prentice v. County Court of Milwaukee County,* 70 Wis. 2d 230, 239–40, 234 N.W.2d 283 (1975).

by the parties in all cases in the manner prescribed by law. Provided, however, that the legislature may, from time to time, by statute provide that a valid verdict, in civil cases, may be based on the votes of a specified number of the jury, not less than five-sixths thereof.

Wis. Const. art. I, § 5 (emphasis added).

¶ 13. Historically, Article I, § 5 has been interpreted as preserving a right to trial by jury in civil cases. For instance, in *Bennett v. State,* 57 Wis. 69, 74 (1883), the court stated:

> It is evident that sec. 5 . . . was intended to secure the right of trial by jury in civil and not in criminal actions. The words in the section, "and shall extend to all cases at law, without regard to the amount in controversy," clearly limit the provisions of that section to civil actions at law, and exclude the idea that it was intended to apply to criminal actions. The provision in said section that "a jury trial may be waived by the *parties* in all cases, in the manner prescribed by law," confirms this construction of the section.

A line of cases supports this construction.[10]

¶ 14. Nonetheless, there are also cases from this court that borrow concepts from Article I, § 5 and attempt to apply them to the jury trial right in criminal cases protected by Article I, § 7.[11]

---

[10] *State v. Lehman,* 108 Wis. 2d 291, 298 n.3, 321 N.W.2d 212 (1982); *State ex rel. Sauk County Dist. Attorney v. Gollmar,* 32 Wis. 2d 406, 410, 145 N.W.2d 620 (1966); *State v. Smith,* 184 Wis. 664, 669, 200 N.W. 638 (1924). *See also State v. Ledger,* 175 Wis. 2d 116, 499 N.W.2d 198 (Ct. App. 1993) (Anderson, J., dissenting).

[11] *State v. Norman,* 2003 WI 72, ¶ 58, 262 Wis. 2d 506, 664 N.W.2d 97; *State v. Johnson,* 2001 WI 52, ¶ 11, 243 Wis. 2d 365, 627 N.W.2d 455; *State v. Seymour,* 183 Wis. 2d 683, 694, 515

 ¶ 15. Interpreting Article I, § 5 inevitably requires the court to deal with the meaning of the phrase "the right of trial by jury shall remain *inviolate*." The maxim that is often repeated is that "The right to trial by jury preserved by the constitution is the right as it existed at the time of the adoption of the constitution in 1848." *Town of Burke v. City of Madison*, 17 Wis. 2d 623, 635, 117 N.W.2d 580 (1962).

¶ 16. Through the years, this maxim has sometimes been embellished: "The language of sec. 5, art. I., Const., that 'the right of trial by jury shall remain inviolate,' means that it shall remain as full and perfect as it was when the constitution was adopted and shall extend to all cases where the right existed at that time." *State ex rel. Schumacher v. Markham*, 160 Wis. 431, 436, 152 N.W. 161 (1915). One of the first formulations came from *Gaston v. Babcock*, 6 Wis. 490 [*503], 494 [*506] (1857), where the court observed: "We suppose this expression must have reference to the state of the law as it existed at the formation of the constitution, and means that this right shall continue as it was at the time of the formation and adoption of the constitution . . . ."

¶ 17. This formulation presents two distinct questions. First, when is there a constitutional "right" to a jury trial in a civil case? Second, when there is a "right" to a jury trial in a civil case, how, if at all, may the form and features of that jury trial be different from the form and features in 1848?

N.W.2d 874 (1994); *State v. Lomagro*, 113 Wis. 2d 582, 590–91, 335 N.W.2d 583 (1983); *Manson v. State*, 101 Wis. 2d 413, 417, 304 N.W.2d 729 (1981); *Holland v. State*, 91 Wis. 2d 134, 138, 280 N.W.2d 288 (1979).

¶ 18. This court dealt with the first question recently in *Village Food* and concluded that "a party has a constitutional right to have a statutory claim tried to a jury when: (1) the cause of action created by the statute existed, was known, or was recognized at common law at the time of the adoption of the Wisconsin Constitution in 1848[;] and (2) the action was regarded at law[12] in 1848."[13] *Village Food,* 254 Wis. 2d 478, ¶ 11. We explained this conclusion, saying that the language in the constitution that the right to jury trial "shall remain inviolate," "clearly indicates that *non-statutory*[14] causes of action at law, where a jury trial was guaranteed before the passage of the state constitution, would continue to have a guaranteed right to a jury trial attached even after the passage of the consti-

------

[12] Actions recognized in 1848 but remedied through writs of quo warranto, mandamus, or other equitable actions—not legal actions—do not pass this test. *Village Food & Liquor Mart v. H&S Petroleum, Inc.,* 2002 WI 92, ¶ 15, 254 Wis. 2d 478, 647 N.W.2d 177; *see also Upper Lakes Shipping, Ltd. v. Seafarers' Int'l Union,* 23 Wis. 2d 494, 503, 128 N.W.2d 73 (1964) ("The scope of [Article I, § 5] is further limited to actions 'at law' at the time of the adoption of the original constitution"); *Norwest Bank Wisconsin Eau Claire, N.A. v. Plourde,* 185 Wis. 2d 377, 386, 518 N.W.2d 265 (Ct. App. 1994) ("It is well settled that the right to a jury trial does not extend to equitable actions . . . .").

[13] In adopting this conclusion, we modified slightly a test proposed by the court of appeals in *State v. Ameritech Corp.,* 185 Wis. 2d 686, 517 N.W.2d 705 (Ct. App. 1994). *Village Food,* 254 Wis. 2d 478, ¶ 11.

[14] We then clarified that our holding also applied to some statutory causes of action: "It certainly follows then that . . . a cause of action created *by statute* after 1848 will have a constitutionally guaranteed right to a jury trial attached if that statute *codifies* a claim that existed in the common law before the adoption of the constitution." *Village Food,* 254 Wis. 2d 478, ¶ 11.

tution." *Id.*, ¶ 10 (citing *Gaston,* 6 Wis. at 494 [*506]). This test is consistent with our past cases.[15]

¶ 19. The easiest way to resolve the issue in this case is to determine whether the violation for speeding "existed, was known, or was recognized at common law at the time of the adoption of the Wisconsin Constitu-

---

[15] *See, e.g., State v. Hezzie R.,* 219 Wis. 2d 848, 868, 580 N.W.2d 660 (1998) (There is no right to a jury trial in a juvenile proceeding, because "the rights preserved in Wis. Const. art. I, § 5 are only those rights that existed at the time the Wisconsin Constitution was adopted in 1848." (citing *N.E. v. DHSS,* 122 Wis. 2d 198, 203, 361 N.W.2d 693 (1985))); *Gen. Drivers & Helpers Union, Local 662 v. WERB,* 21 Wis. 2d 242, 252, 124 N.W.2d 123 (1963) (No form of unfair labor law was in existence at the time that the Wisconsin Constitution was enacted, and accordingly "there is no constitutional obligation to afford a jury trial in such proceedings"); *Bekkedal v. City of Viroqua,* 183 Wis. 176, 192, 196 N.W. 879 (1924) ("From an early day it was held that the constitutional provision preserving inviolate the right of trial by jury preserves that right inviolate as it existed at the time of the adoption of the constitution. The matter of special assessments and reassessments is purely a statutory proceeding, relates to taxation, and there was at common law no right of jury trial. Therefore, unless the statute itself makes provision for a jury trial, the parties are not entitled thereto in a proceeding of the kind now before us"); *Mead v. Walker,* 17 Wis. 195 [*189], 197 [*190] (1863) ("[O]ur constitution . . . has been interpreted as designed to secure only the right of trial by jury in all cases where it could by law have been claimed as a matter of right at the time the constitution was adopted"); *Stilwell v. Kellogg,* 14 Wis. 499 [*461], 504 [*465] (1861) ("The constitution provides that the 'right of trial by jury shall *remain* inviolate,' which evidently had reference to the condition of the law as it existed when the constitution was adopted. It, therefore, did not preserve it as a matter of right, in those cases which, by the law and practice then existing, were submitted entirely to the judgment of the court." (internal citation omitted)); *Gaston v. Babcock,* 6 Wis. 490 [*503], 494 [*506] (1857).

tion in 1848." *Id.,* ¶ 11. Before we analyze the law as it existed in 1848, however, we must define the scope of our inquiry. McGrew argues that we should broadly frame the question, either as whether civil forfeiture actions existed at the relevant time, or alternatively as whether any "laws of the road" existed. The County, on the other hand, argues that we should narrowly frame our inquiry as whether a cause of action for motor vehicle speeding existed in 1848.

¶ 20. For guidance, we look to our recent decisions interpreting this constitutional provision. In *Village Food,* we investigated whether a statutory cause of action created by the Unfair Sales Act, Wis. Stat. § 100.30, existed in 1848. First, we rejected the defendant's claim that the action was analogous to broad classes of 1848 actions, such as "business fraud, and torts such as cheating, fraud, deceit, and business slander." *Id.,* ¶ 23. We were persuaded, however, by entries in Blackstone's *Commentaries on the Laws of England* describing the common law offenses of forestalling the market, regrating, and engrossing. *Id.,* ¶ 27. We noted that "these causes of action are of the same 'nature' as the present cause of action . . . ." *Id.* We additionally remarked,

> [t]he fact that the type of unfair trade practice prohibited at common law *differs slightly* in its means from the unfair trade practice prohibited under the Unfair Sales Act is, we conclude, an insufficient distinguishing characteristic to restrict a jury trial in this case. They are *essentially 'counterpart[s]'* in combating unfair trade practices.

*Id.,* ¶ 28 (emphasis added).[16]

---

[16] Wisconsin appellate courts have addressed this question in several factual settings.

¶ 21. Accordingly, we conclude that in order to deem the *Village Food* test satisfied, we need not find specific identity between the speeding violation at bar and an 1848 cause of action, so long as there was an 1848 action that only "differs slightly" and is "essentially [a] counterpart" to the current cause. *Id.* With this framework in mind, we turn to the specific cause of action at issue.

¶ 22. The County prosecuted McGrew under its ordinance adopting, among others, Wis. Stat. § 346.57(4)(h), which provides:

(4) . . . [N]o person shall drive a vehicle at a speed in excess of the following limits:

. . . .

(h) In the absence of any other fixed limits or the posting of limits as required or authorized by law, 55 miles per hour.

Wis. Stat. § 346.57(4)(h). In turn, the statutes define "vehicle" as "every device in, upon, or by which any

In *N.E.* and *Hezzie R.*, this court rejected the argument that juvenile delinquents have a right to a jury trial, because "[j]uvenile delinquency proceedings did not exist at the time the constitution was adopted . . . ." *N.E.*, 122 Wis. 2d at 203. However, because the entire class of juvenile proceedings did not exist in 1848, the *N.E.* and *Hezzie R.* courts did not need to elaborate on whether specific identity is required, or whether any analogous 1848 cause of action will satisfy the constitutional requirements.

Similarly, in *Town of Burke v. City of Madison,* 17 Wis. 2d 623, 635, 117 N.W.2d 580 (1962), this court held that no right to a jury trial in an election contest existed because no such right existed at the time the constitution was adopted. *See also State ex rel. Allis v. Wiesner,* 187 Wis. 384, 395, 204 N.W. 589 (1925) (No right to trial by jury in eminent domain cases).

person or property is or may be transported or drawn upon a highway, except railroad trains." Wis. Stat. § 340.01(74).[17]

¶ 23. We must decide whether this cause of action was cognizable in 1848.[18] At first glance, it might appear that this is a simple question, because the automobile was not mass-produced in the United States until the late 1890s.[19] However, we note that Wis. Stat. § 346.57(4) does not apply solely to "motor vehicles." The broad statutory definition of "vehicle" does not mandate such a narrow construction, and in addition "motor vehicle" is defined separately. Wis. Stat. § 340.01(35).[20]

¶ 24. As to sources of law existent in 1848, Blackstone made no reference to provisions specifically analogous to a "law of the road," at least as far as driving

---

[17] The definitions in § 340.01 apply to chapter 346 unless otherwise specified. Wis. Stat. § 346.01.

[18] Our past cases have drawn from a variety of sources to determine whether an action was cognizable in 1848. For example, several of our cases have referenced Blackstone's *Commentaries on the Laws of England* (1778) (hereinafter Blackstone, *Commentaries on the Laws of England*) to determine whether an action was recognized prior to statehood. *Village Food*, 254 Wis. 2d 478, ¶¶ 26–27; *State v. Hansford,* 219 Wis. 2d 226, 237, 580 N.W.2d 171 (1998); *Norval v. Rice,* 2 Wis. 17 [*22], 20 [*27] (1853). We also must examine the 1849 statutes, because they were intended to "collate and revise all the public acts of the state of a general and permanent nature," as of July 1848." Revised Statutes of Wisconsin (1849) at iii.

[19] James J. Flink, *The Automobile Age* 6–7 (M.I.T. Press 2001).

[20] " 'Motor vehicle' means a vehicle . . . which is self-propelled . . . ." Wis. Stat. § 340.01(35).

is concerned. However, Blackstone noted the existence of "common nuisances." Among these are

> [a]nnoyances in *highways, bridges,* and public *rivers,* by rendering the same inconvenient or dangerous to pass, either positively, by actual obstructions, or negatively, by want of reparations. For both of these, the person so obstructing, or such individuals as are bound to repair and cleanse them, or (in default of these last) the parish at large, may be indicted, distrained to repair and mend them, and in some cases fined. And a presentment thereof by a judge of assize, etc., or a justice of the peace, shall be in all respects equivalent to an indictment.

4 Blackstone, *Commentaries on the Laws of England* 167 (1778).[21]

¶ 25. McGrew argues that we should analogize the Blackstonian recognition of "nuisances" to his speeding ticket. We decline to do so. Applying the standards we have reiterated, we view the class of actions categorized as "nuisances" as simply too broad to be analogized to a speeding violation. McGrew has provided no authority for calling a speeding ticket a public "nuisance," and in our view the two are more than "slightly different"; they are not "essentially counterparts." *See Village Food,* 254 Wis. 2d 478, ¶ 28. Accordingly, the causes of action recognized in Blackstone's *Commentaries* are not sufficient to show that an action for speeding existed in 1848. We continue our examination of pre-statehood law.

---

[21] Blackstone also notes that certain "disorderly offences, such as common swearing, drunkenness, vagrancy, idleness, and a vast variety of others" were triable by "summary conviction" without a jury. 4 Blackstone, *Commentaries on the Laws of England* at 280–81. It is unclear whether "common nuisances" such as highway obstructions were included in this category.

¶ 26. No specific offense, let alone any action analogous to speeding, is mentioned in the 1787 ordinance establishing the Northwest Territory, from which Wisconsin was eventually formed. The same is true of the 1836 ordinance establishing the territorial government of Wisconsin. McGrew cannot depend on these enactments.

¶ 27. McGrew's final arguments are based on the 1849 edition of the Wisconsin Statutes. This edition was intended to "collate and revise all the public acts of the state of a general and permanent nature," as of July 1848.[22] Wis. Rev. Stat. at iii (1849).

¶ 28. To the extent that the 1849 statutes recognize broad causes of action for civil forfeitures, they are also insufficient to support McGrew's demands. As we have noted, such broad classifications are not sufficiently analogous to the cause of action at issue here, speeding. McGrew's analysis would lead to a jury trial in virtually every forfeiture case.

¶ 29. Examining the 1849 Statutes more closely, we observe that they contain provisions concerning obstruction of highways. Wis. Stat. ch. 16, § 86 (1849). The forfeiture for such an offense was not to exceed twenty-five dollars. *Id.* This cause of action is very similar to that described in Blackstone, and for similar reasons we reject it as too different from the cause of action at bar.

¶ 30. The 1849 Statutes also contained an entire chapter entitled, "Of the Law of the Road, and the Regulation of Public Carriages." Wis. Stat. ch. 33

---

[22] Wisconsin joined the Union on May 29, 1848, as the 30th state. 2003–04 *Wisconsin Blue Book* at 684.

(1849).[23] Close examination of the plain language of these provisions leads to the conclusion that Sections 1

[23] Chapter 33 of the 1849 Statutes ("Of the Law of the Road, and the Regulation of Public Carriages") provided in full:

Section 1. Whenever any persons shall meet each other on any bridge or road, travelling with carriages, waggons, sleds, sleighs, or other vehicles, each person shall seasonably drive his carriage or other vehicle to the right of the middle of the travelled part of such bridge or road, so that the respective carriages, or other vehicles aforesaid, may pass each other without interference.

Sec. 2. Every person offending against the provisions of the preceding section, shall for each offence forfeit a sum not exceeding twenty dollars, and shall also be liable to the party injured for all damages sustained by reason of such offence.

Sec. 3. No person owning, or having the direction or control of any coach, or other vehicle, running or travelling upon any road in this state, for the conveyance of passengers, shall employ, or continue in employment, any person to drive such coach or other vehicle, who is addicted to drunkenness, or to the excessive use of intoxicating liquors; and if any such person shall violate the provisions of this section, he shall forfeit at the rate of five dollars per day for all the time during which he shall have kept such driver in such employment.

Sec. 4. If any driver, whilst actually employed in driving such coach or vehicle, shall be guilty of intoxication, it shall be the duty of the owner or person having the charge or control of such coach or other vehicle, on receiving written notice of the fact, signed by any passenger who witnessed the same, and certified by him under oath, forthwith to discharge such driver from such employment, and every person who shall retain or have in such service, within six months after the receipt of such notice, any driver who shall have been so intoxicated, shall forfeit five dollars per day for all the time during which he shall keep any such driver in such employment after receiving such notice.

Sec. 5. It shall not be lawful for the driver of any carriage, or other vehicle used for the conveyance of passengers for hire, to leave the horses attached thereto, while any passenger remains in or upon the same, without making such horses fast with a sufficient halter, rope, or chain, or without some suitable person to take the charge and guidance of them, so as to prevent their

and 2 apply to all "vehicle" operators, while Sections 3 through 6 pertain to owners and operators of vehicles "for hire." As McGrew was driving a private vehicle, not a vehicle for hire, we focus on the first two sections. These sections mandate that a vehicle keep to the right side of the road. We conclude that this cause of action is not akin to McGrew's speeding violation.

¶ 31. To give context to this conclusion, we briefly review the development of Wisconsin's traffic code. After statehood, the legislature slowly modernized Wisconsin's "laws of the road." In 1869 the legislature enacted a law allowing towns to collect suitable penalties "for the riding or driving faster than a walk on any bridges within the limits of their towns . . . ." § 1, ch. 70, Laws of 1869 (codified at ch. 19, § 153 (1871)). This statute was codified with other statutes relating to the maintenance and operation of highways and bridges, not with the rules of the road.

¶ 32. In 1905 the legislature passed Wisconsin's first true speed limit for automobiles:

> Speed limit; rules of road to be observed. Section 3. No person or persons shall use, operate ride or drive any automobile or other similar motor vehicle along or upon any public highway of this state within the

running; and if any such driver shall violate the provisions of this section, he and his employer or employers, jointly and severally, shall forfeit a sum not exceeding twenty dollars; but no prosecution shall be commenced therefor after the expiration of three months from the time of committing the offence.

Sec. 6. The owners of every carriage or other vehicle, running or travelling upon any road or public highway, for the conveyance of passengers for hire, shall be liable, jointly and severally, to the party injured, in all cases, for all injuries and damages done by any person in the employment of such owners as a driver, while driving such carriage, to any person, or to the property of any person, whether the act occasioning such injury or damage be wilful, negligent, or otherwise, in the same manner as such driver would be liable.

corporate limits of any city or village at a speed exceeding twelve miles per hour, nor on any of the public highways outside the corporate limits of a city or village at a speed exceeding twenty-five miles per hour; provided that in turning corners, in going around curves, at sharp declines, at the intersection of any cross road, and where, for any cause, the view in the direction in which the vehicle is proceeding, shall be obstructed, the speed shall be reduced to such a rate as will tend to avoid danger of accident; the operator, when such vehicle is in motion, shall observe the rules of the road.

§ 3, ch. 305, Laws of 1905 (codified at ch. 73a, § 1636–49 (1905)).[24] Violation of the speeding provision was pun-

---

[24] This section was revised in 1911, ch. 600, Laws of 1911, and revised again and renumbered as § 85.08 in 1923. § 178, ch. 108, Laws of 1923. The revised law included an age limit to operate certain types of vehicles. *Id.* The relevant part of the new law provided:

> No person shall operate a motor vehicle recklessly or at a rate of speed greater than is reasonable and proper with regard to the width, traffic and use of the highways and the rules of the road, or so as to endanger the property, life or limb of any person, and no person shall operate any such vehicle along any highway in any city or village or through any hamlet which contains more than ten houses and places of business at a rate of speed exceeding fifteen miles per hour, except where the houses and places of business shall average more than two hundred feet apart, where a safe rate of speed not exceeding twenty miles an hour may be used; nor elsewhere on any public highway at a speed exceeding thirty miles per hour; and no person shall operate such motor vehicle through any cemetery or county or state hospital or poor farm grounds or any park or in passing any school grounds at a speed exceeding twelve miles per hour. In turning corners and going around curves, at sharp declines, at the intersection of any street or crossroad and where the view in the direction in which the vehicle is proceeding shall be obstructed, the driver shall so limit the speed of such vehicle as shall tend to avoid accidents.

§ 178, ch. 108, Laws of 1923 (codified at Wis. Stat. § 85.08 (1923)).

ishable by "a fine of not less than ten dollars and not more than twenty-five dollars." § 8, ch. 305, Laws of 1905.

¶ 33. Construing this statute "in view of the well-known need for regulation of the operations of the dangerous modern road machine," this court stated: "The manifest purpose of the law was to protect travelers upon public ways from being subjected to the peril created by unduly speeding automobiles thereon." *Weirich v. State*, 140 Wis. 98, 103, 121 N.W. 652 (1909).

¶ 34. In 1913 the legislature added additional provisions regarding vehicle passing speed. § 1, ch. 138, Laws of 1913. It restricted the permissible passing speed to ten miles per hour. *Id.*

¶ 35. By 1921 the statutes contained directions for passing a horse, signals required to be used on roadways, and requirements that automobiles be equipped with brakes, signaling devices, and lights. *See* Wis. Stat. ch. 761, §§ 1636–50–52a (1921). In 1929 the legislature substantially rewrote the laws of the road, adding 78 new sections to the statutes. *See* § 3, ch. 454, Laws of 1929. One of these, codified at Wis. Stat. § 85.40(1) (1929) provided:

UNLAWFUL OPERATION OF VEHICLES. It shall be unlawful for any person to operate any vehicle upon a highway carelessly and heedlessly, in willful or wanton disregard of the rights or safety of others, or without due caution and circumspection *or at speeds greater than those specified in this section or in a manner so as to endanger or be likely to endanger the property, life, or limb of any person, or without due regard to the traffic, surface, width of the highway, and any other condition of whatever nature then existing.*

§ 3, ch. 454, Laws of 1929 (emphasis added).

Other provisions in § 85.40 dealt with special situations

541

such as speed limits in school zones, speed limits on curves and grades, and speed limits for heavy vehicles and buses. Wis. Stat. § 85.40(2)-(12).

¶ 36. In 1957 the legislature once again substantially amended the laws of the road, creating Chapters 340 through 349 of the statutes as the "Vehicle Code." Chapter 260, Laws of 1957. Wisconsin Stat. § 346.57(4)(h) (1957) provided:

> 4. . . . [N]o person shall drive a vehicle at a speed in excess of the following limits unless different limits are indicated by official traffic signs:
>
> . . . .
>
> (h) In the absence of any other fixed limits or the posting of limits as required or authorized by law, 55 miles per hour during hours of darkness and 65 miles per hour at other times.

¶ 37. Because the cause of action for speeding did not exist until at least 1905, McGrew has not satisfied the *Village Food* test.[25] Even though we do not demand specific identity between a current cause of action and one recognized in 1848, we will adhere to the *Village Food* requirement that the actions be only "slightly different" or "counterparts." We see no such relationship here.

¶ 38. Even if we were to analogize the 1849 "laws of the road" to a speeding offense, we note that the maximum penalty for a violation of Section 1 was

---

[25] The word "speeding" did not appear in a Wisconsin case until 1888, *see Porter v. Day*, 71 Wis. 296, 302, 37 N.W. 259 (1888), and that reference involved horse racing. In all likelihood, there was no way to measure the "speed" of a vehicle accurately in 1848.

"twenty dollars." Wis. Stat. ch. 33, § 2 (1849). Accordingly, as of 1849, sole jurisdiction for a prosecution of this offense rested in courts of the justices of the peace. Wis. Stat. ch. 88, § 5(5) (1849) ("Every such justice shall have jurisdiction over . . . [a]ctions for a penalty not exceeding one hundred dollars, given by any statute of this state . . . ."). In civil cases tried before a justice of the peace, "either party . . . may demand that the cause be tried by a jury of six men." Wis. Stat. ch. 88, § 80 (1849). In fact, the parties, had the option to settle on "six, or any less number of jurors to try the cause." Wis. Stat. ch. 88, § 86 (1849). Appeals from the justice of the peace courts were taken to the county courts. Wis. Stat. ch. 86, § 2 (1849). In the county court, each party had a right to a trial "by a jury to consist of not more than six persons . . . ." Wis. Stat. ch. 86, § 16 (1849).[26]

¶ 39. Thus, even to the extent that McGrew's speeding violation could be analogized to the "laws of the road" of 1849, he would have had a right to a jury of six, not 12, before a justice of the peace.

¶ 40. McGrew points to our decisions in *Norval v. Rice,* 2 Wis. 17 [*22] (1853), and *State v. Hansford,* 219 Wis. 2d 226, 580 N.W.2d 171 (1998), in an attempt to invalidate this analysis.

---

[26] This provision was declared unconstitutional in *Norval,* discussed *infra* in greater detail.

Under some circumstances, it appears that the county court originally may have had the power to decide a case without a jury. Wis. Stat. ch. 88, § 238 (1849) ("[I]f . . . the nature and circumstances of the case . . . are such as not to require a trial by jury, the county court shall have power to . . . give such judgment, or make such order in the case, as law and justice between the parties shall require."). The decision in *Norval* made the constitutionality of this statute uncertain. As the legislature has currently provided for a jury of six, we need not address the issues potentially raised by Wis. Stat. ch. 88, § 238 (1849).

¶ 41. *Hansford* can be distinguished. It deals exclusively with criminal cases and declares that Article I, § 7 of the Wisconsin Constitution provides a right to a jury of 12 persons in all criminal cases. The court did not rely on Article I, § 5. In fact, it cited *Bennett v. State,* 57 Wis. 69, 14 N.W. 912 (1883), to the effect that the right to trial by jury in criminal cases is based on Article I, § 7. *Hansford,* 219 Wis. 2d at 239. The court also cited Article XIV, § 13: "Such parts of the common law as are now in force in the territory of Wisconsin, not inconsistent with this constitution, shall be and continue part of the law of this state until altered or suspended by the legislature." The court stated: "Although the legislature has the authority to alter common law, it may not do so contrary to the provisions set forth in the Wisconsin Constitution." *Id.* at 235 n.10.

¶ 42. *Norval* presents a more difficult problem. In *Norval,* decided in 1853, this court held that

> it is certain that when our Constitution was adopted, we had no *court of record* in existence in Wisconsin, in which the number of the jury for trials of facts in any case, except by consent, could be less than twelve; so that it cannot be said that when a trial by jury, *in a court of record* such as the County Court, must be by a jury of six persons and no more, the trial by jury *in a court of record which has been enjoyed before the adoption of the Constitution, remains inviolate.*

*Norval,* 2 Wis. at 23 [*30] (emphasis added; "*remains inviolate*" emphasized in original).

¶ 43. It is possible to distinguish *Norval* by emphasizing that the cause of action here did not exist in 1848, and by pointing to the justice of the peace court in which the cause would have been tried if it had existed. But this would be little better than sleight of hand. We

think for several reasons that the *Norval* court might not have reached the same decision today.

¶ 44. Justice Samuel Crawford posed this question in 1853: "The principal question involved in this case is whether, under the Constitution, the defendant . . . was entitled to a trial of the issue . . . by a jury of twelve men, when he demanded the same, and paid the usual jury fee into court." 2 Wis. at 19 [*25]. The court quoted Lord Coke: "[A] trial [of facts] by *twelve* men is the most frequent and common[,]" *id* at 20 [*26], and Blackstone: "[T]he court awards a writ . . . commanding the sheriff that he cause to come here on such a day, twelve free and lawful men . . . of the body of his county, by whom the truth of the matter may be better known." *Id.* at 20 [*27].

¶ 45. These statements reveal an outdated concept of the jury. For instance, there are times when a jury will not be drawn from a party's "county" because such a jury might be biased, and the whole process of jury selection and voir dire is radically different today from the process in 1848.[27] Thus, the *Norval* court's statement that the right of trial by jury "shall continue

---

[27] In justice of the peace courts, jury selection occurred as follows:

> Sec. 82. Upon such demand of a jury, the justice shall direct the sheriff, or any constable of the county who may be present, to write down the names of eighteen persons of the county qualified to serve as jurors in courts of record, who shall be in no wise of kin to the plaintiff or defendant, nor interested in the suit.

> . . . .

> Sec. 84. From such list of names, each party, commencing with the party demanding such jury, may strike out alternately six names, and in case of the absence of either party, or his refusal to strike out, the justice shall appoint some other person to strike out six names.

as it was at the time of the formation and adoption of the Constitution by the people of the State," 2 Wis. at 22 [*29], cannot be taken literally. If it were, modern procedural tools such as summary judgment could not be applied in civil cases, just as they are not applied in criminal cases. Plainly, there have been enormous changes in the form and features of jury trials since 1848.

¶ 46. The *Norval* court acknowledged that six-person juries existed in the Wisconsin Territory. *Id.* at 23 [*29–30]. It acknowledged six-person juries in justice courts and said: "So far as the restriction of the jury before a justice of the peace is concerned, we do not feel at liberty to inquire at this time, but may remark that the party aggrieved by the decision before the justice, might, in certain cases, remove the case by appeal to the District Court, where a trial by jury of twelve men would be available." *Id.* [*30]. The court artfully dodged the constitutionality of six-person justice juries by pointing to a right to appeal to a court of record, but Article I, § 5 says nothing about juries in courts of record. Moreover, the court accorded the six-person jury statute it struck down no presumption of constitutionality.

> Sec. 85. The justice shall issue a venire, requiring the officer to summon the six persons whose names remain upon the said list of names to appear at the time and place mentioned therein, to make a jury for the trial of the action between the parties in the venire mentioned.

Wis. Stat. ch. 88, §§ 82, 84, 85 (1849). There could not have been any "voir dire" as that term is currently understood, because none of the jurors were present in the courtroom as the parties selected the jurors. A similar procedure applied in county court. Wis. Stat. ch. 86, § 17 (1849).

¶ 47. The *Norval* court did not have the benefit of 150 years of six-person juries in Wisconsin or the Supreme Court's decision in *Williams v. Florida,* 399 U.S. 78 (1970).

¶ 48. By depriving the legislature of the authority to modify trials by jury in civil cases except in those cases in which a party has no right to a jury, *Norval* has forced appellate courts to engage in judicial gamesmanship. For example, in *Ogden v. City of Madison,* 111 Wis. 413, 429–30, 87 N.W. 568 (1901), the court refused to require a jury trial of any size for the violation of a municipal ordinance. To justify this result, the court explained:

> When the peace and dignity of the *state* are being vindicated the constitution says the accused may have a jury trial. When some *local municipal* by-law has been invaded the constitutional guaranty does not apply. . . . "[W]e are not now prepared to inaugurate the revolution that must follow the announcement of the doctrine that a jury trial is an indispensable requisite."

*Id.* at 429–30 (quoting *McInerney v. City of Denver,* 29 P. 516, 519 (Colo. 1892)) (emphasis added). The *Ogden* court defended its decision by distinguishing an ordinance violation from a state civil forfeiture (which ought not to make a difference if the cause of action were recognized at common law), and by relying on the fact that ordinance cases can be appealed to a court of record where a litigant could get a jury trial. Circumstances have changed. We think it makes more sense to liberally recognize a right to a jury of six than narrowly recognize a right to a jury of 12.

¶ 49. We make these observations because, although "speeding" was not a cause of action recognized at common law in 1848, other traffic violations such as driving outside one's lane cannot be so easily distin-

guished. It makes little sense to us to scrutinize whether each individual traffic violation was recognized at common law so as to determine whether a violator is entitled to a six- or 12–person jury.

¶ 50. In any event, in this case, the decision is clear: speeding violations were not "known to the common law and to the court of the territory of Wisconsin before the state was organized." *Hansford,* 219 Wis. 2d at 239 (citing *Bennett,* 57 Wis. at 75). Accordingly, McGrew has no right to a 12–person jury.

## IV. CONCLUSION

¶ 51. We conclude that McGrew has not satisfied the heavy burden of showing that Wis. Stat. § 345.43 is unconstitutional. Because he cannot show that the cause of action for a speeding violation existed at the time the Wisconsin Constitution was enacted, he has no constitutional right to a trial by a jury of 12. *See Village Food,* 254 Wis. 2d 478, ¶ 11. As such a right is not constitutionally mandated, the legislature is free to fix the number of jurors at six, as it has done.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 52. ANN WALSH BRADLEY, J. *(concurring).* Unlike the lead opinion, I recognize that McGrew has a constitutional right to a jury trial for this civil forfeiture action. Based upon the law at the time the Wisconsin Constitution was enacted, I determine that the constitutional right is for a six-person jury. Because McGrew exercised his right to a six-person jury here, I conclude that there was no error. Accordingly, I respectfully concur.

¶ 53. In *Village Food & Liquor Mart v. H&S Petroleum, Inc.,* 2002 WI 92, ¶ 11, 254 Wis. 2d 478, 647

N.W.2d 177, this court determined that "a party has a constitutional right to have a statutory claim tried to a jury when: (1) the cause of action created by the statute existed, was known, or was recognized at common law at the time of the adoption of the Wisconsin Constitution in 1848[;] and (2) the action was regarded at law in 1848."

¶ 54. Applying this test, the lead opinion determines that the charge of speeding "did not exist at common law at the time of the adoption of the Wisconsin Constitution in 1848." Lead op., ¶ 3. After examining the relevant violations known at common law, it concludes that "McGrew has no constitutional right to a jury trial." *Id.*

¶ 55. The lead opinion's analysis, however, presents a conundrum. After acknowledging that certain rules of the road did exist at common law at the time the Constitution was enacted, the lead opinion's analysis leaves some traffic violations with a statutory right to a six-person jury and others with a constitutional right to a 12–person jury. *Id.*, ¶ 49. We are thus left with a constitutional hodgepodge.

¶ 56. The lead opinion errs when it narrowly focuses on McGrew's speeding violation. The error of its ways is made evident by its recognition that it "makes little sense for us to scrutinize whether each individual traffic violation was recognized at common law so as to determine whether a violator is entitled to a six- or 12–person jury." *Id.*

¶ 57. The scope of the lead opinion's focus thrusts it into the dilemma that it encounters. Rather than narrowly focusing on each individual violation, the lead opinion should broaden its lens to focus on violations of the "rules of the road." This change in focus is more than a technical nuance; it is outcome determinative.

549

Significantly, it produces an outcome that avoids the constitutional hodgepodge and makes sense.

¶ 58. Thus, the question we should address is not whether a violation for speeding existed at the time the Wisconsin Constitution was enacted. Rather, the question more broadly stated is whether "rules of the road" existed at common law at the time the Wisconsin Constitution was enacted in 1848. To help resolve this broader question, we look to "the earliest interpretation of the [rules of the road] by the legislature as manifested in the first law passed following adoption" of the Wisconsin Constitution in 1848. *Thompson v. Craney,* 199 Wis. 2d 674, 680, 546 N.W.2d 123 (1996).

¶ 59. It is evident that "rules of the road" did exist in 1848. Chapter 33 of the 1849 statutes is entitled "Of the Law of the Road, and the Regulation of Public Carriages." Set forth in this chapter are several rules governing traffic violations. For example, a forfeiture of $20 was imposed for a violation for operating "to the right of the middle of the travelled part of such bridge or road . . . ." Wis. Rev. Stat. ch. 33, § 2 (1849). A forfeiture of $5 was imposed against public carriage owners who employed "persons addicted to drunkenness." Wis. Rev. Stat. ch. 33, § 3 (1849).

¶ 60. The "laws of the road" violations recognized at common law in 1848 are the predecessors to the "rules of the road" violations recognized today. Included in the "rules of the road" violations is a civil forfeiture action for speeding. See Wis. Stat. § 346.60 (2003–04).

¶ 61. Having recognized the existence of "laws of the road" at the time the Constitution was enacted, I turn next to how violations of these rules were dealt with in 1848. Our history shows that causes of action for such violations were tried by justice of the peace

courts, where it was customary for the penalty to be a minor forfeiture and where the alleged violator had a right to a six-person jury.

¶ 62. Justice of the peace courts had jurisdiction to hear actions for the recovery of forfeitures of less than $100. Wis. Rev. Stat. ch. 88, § 5(5) (1849). All of the "laws of the road" violations fell comfortably within that limit. *See* Wis. Rev. Stat. ch. 33 (1849). Thus, all such cases alleging "laws of the road" violations were tried before justice of the peace courts.

¶ 63. Section 80 of Chapter 88 clearly provides for a right to a six-person jury trial in a justice of the peace court. It states: "either party, on first paying to the justice the jury fees in advance, which shall be taxed against the losing party, may demand that the cause be tried by a jury of six men." Applying the *Village Food* test, I conclude that a defendant has a constitutional right for a six-person jury trial in forfeiture actions asserting violation of the "rules of the road."

¶ 64. Unlike the dissent, I do not interpret the case of *Norval v. Rice,* 2 Wis. 17,[*22] (1853) as altering this analysis or conclusion. In that case the court struck down a statute providing for six-person juries in county court civil cases, i.e. courts of record. *Id.* at 23,[*30]. The court determined that Article I, § 5, of the Wisconsin Constitution preserved the right to a 12–person jury trial in a court of record. *Id.* However, it explicitly declined to address the constitutionality of statutes providing for six-person juries in justice of the peace courts, which are at issue here. The court stated:

> So far as the restriction of the jury before a justice of the peace is concerned, we do not feel at liberty to inquire at this time, but may remark that the party aggrieved by the decision before the justice, might, in

certain cases, remove the case by appeal to the District Court, where a trial by a jury of twelve men would be available.

*Id.*

¶ 65. Despite *Norval's* silence on the issue, the dissent interprets the decision as mandating a 12–person jury trial in all civil cases, including the cases involving "laws of the road" forfeiture actions tried in justice of the peace courts. The premise behind this conclusion is that an offender charged with violating the laws of the road could appeal a judgment from the justice of the peace courts to the county courts and receive a jury of 12 persons. Dissent, ¶ 89. According to the dissent, "it is not coincidence that [the *Norval*] court allayed its concerns regarding the six-person juries in justice of the peace courts (which it chose not to decide) by noting that 12–person juries could eventually be obtained in a court of record." *Id., ¶* 92.

¶ 66. I conclude that the dissent's reliance on *Norval* is misplaced. To begin, the *Norval* court never indicated that all aggrieved parties in justice of the peace courts could appeal their case to county courts for a 12–person trial. Rather, it merely recognized that some parties "might, in certain cases" have the ability to do so.

¶ 67. Such a qualification highlights the faulty premise of the dissent and its resulting flawed interpretation of *Norval*. The right to an appeal from the justice of the peace courts was strictly controlled by statute. *See, e.g., Pelton v. Town of Blooming Grove,* 3 Wis. 279,[*310], 281,[*312] (1854); *Clark & Rice v. Bowers,* 2 Wis. 92,[*123], 96,[*127] (1853); *Mitchell v. Kennedy,* 1 Wis. 511, 512 (1853). When not provided for by statute, the right to appeal did not exist. *Mitchell,* 1 Wis. at

440,[*512]. If the statutory requirements were not met, then review was by certiorari. *Adler v. Gee,* 3 Wis. 681,[*742] (1854). Some of the "laws of the road" violations had a forfeiture of $5, and as such, the review for those cases was by certiorari review in county court.

¶ 68. The relevant statutes regarding appeal were ch. 88, §§ 226 and 227. Section 226 authorized an appeal where the recovery at issue exceeded $15. It provided:

> Any party to a final judgment rendered by a justice of the peace, where the recovery shall exceed fifteen dollars, except judgment of nonsuit, exclusive of costs, conceiving himself aggrieved thereby, may appeal therefrom to the county court of the county where the same was rendered, in the following cases: 1. Where the judgment was rendered upon an issue of fact joined between the parties; 2. Where it was rendered on an issue of fact joined between the parties, whether the defendant was present at trial or not.

Wis. Rev. Stat. ch. 88, § 226 (1849).

¶ 69. Section 227, meanwhile, authorized several limited exceptions for parties to appeal when the judgment was less than $15. It provided:

> A party may appeal from the judgment of a justice where the judgment is less than fifteen dollars, in the following cases. 1. Where the claim of either party, as proved at trial, shall exceed fifty dollars; 2. Where the defendant did not appear and plead, and final judgment was rendered for the plaintiff on the merits of his claim.

Wis. Rev. Stat. ch. 88, § 227 (1849). Given these parameters, I cannot join the dissent's broad reading of *Norval.*

¶ 70. In sum, taking into account the 1849 statutes that show the existence of forfeiture actions for

"laws of the road" violations, the cause of action against McGrew satisfies the controlling *Village Food* test. It was the custom for the defendants to have a jury of only six persons when forfeiture actions were tried by jury in justice of the peace courts. Because McGrew is constitutionally entitled to only a six-person jury at the trial of his civil forfeiture, and he was tried by a six-person jury here, I conclude that there was no error.[1]

¶ 71. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice N. PATRICK CROOKS join this concurrence.

¶ 72. LOUIS B. BUTLER, JR., J. (*dissenting*). I respectfully dissent. The resolution of this case was decided over 150 years ago in *Norval v. Rice,* 2 Wis. 17, [*22], 23, [*30] (1853). Because I see no reason to abandon *Norval,* I would conclude that McGrew is constitutionally entitled to a jury of 12 persons.

I

¶ 73. Article I, Section 5 of the Wisconsin Constitution provides that "[t]he right of trial by jury shall

---

[1] Applying the *Village Food* test, there are four justices of the court that conclude that McGrew has a constitutional right to a jury. However, there is a split as to whether the right is to a six- or 12–person jury. Nevertheless, this opinion, together with the dissent, form a majority on the constitutional issue that such a right exists and, at a minimum, it is to a six-person jury.

This decision is not to be read, however, that there is a constitutional right to a six-person jury trial in municipal court. Rather, the right is exercised when upon appeal there is a jury trial in circuit court. *See Ogden v. City of Madison,* 111 Wis. 413, 87 N.W. 568 (1901) (the constitutional right to trial by jury does not extend to a prosecution for a violation of a city ordinance in municipal court).

remain inviolate, and shall extend to all cases at law without regard to the amount in controversy." As McGrew's case concerns money damages (a civil forfeiture penalty), this is a case "at law." *See Village Food & Liquor Mart v. H&S Petroleum, Inc.,* 2002 WI 92, ¶ 33, 254 Wis. 2d 478, 647 N.W.2d 177; *Farr v. Spain,* 67 Wis. 631, 632, 31 N.W. 21 (1887); *Tull v. United States,* 481 U.S. 412, 422–25 (1987). The constitutional right to a trial by jury, however, must be gleaned from the common law as it was at the time of the formation and adoption of the constitution. *Norval,* 2 Wis. at 22, [*29]. That is because of the "peculiarity of the language" of Article I, Section 5, which provides that the right shall "remain" inviolate. *Id.* We must therefore determine whether the then-existing common law of 1849 provides McGrew with a constitutional right to a trial by jury. If McGrew is entitled to a trial by jury, we must then determine the requisite number of jurors.

### A

¶ 74. While there were few "laws of the road" that existed during this state's formative years, there were still laws of the road. *See* Lead op., ¶ 30 n.23 (quoting Wis. Rev. Stat. ch. 33 (1849)). Those laws regulated public carriages and vehicular travel on the roadways and highways of this state. *Id.* I would conclude that the laws of the road that existed in 1849 are "essential counterpart[s]" of today's "rules of the road"[1] embodied in our current traffic laws, as the modern rules also regulate public carriages and vehicular travel on the roadways and highways of this state. *Compare Village Food,* 254 Wis. 2d 478, ¶ 28. I am thus in complete agreement with the lead opinion's sentiment that "[i]t

---

[1] Wis. Stat. ch. 346 (2003–04).

makes little sense to us to scrutinize whether each individual traffic violation was recognized at common law so as to determine whether a violator is entitled to a six- or 12–person jury." Lead op., ¶ 49. Because the right to a jury trial is a fundamental right,[2] I conclude that the rules of the road represent the *seedling* for the modern traffic laws and that that satisfies that prong of the *Village Food* test.

¶ 75. As a predicate for this conclusion, a closer reading of the laws of the road reveal that there was an antedated "essential counterpart" to the specific offense of speeding. Wisconsin Stat. ch. 33, § 1 stated:

> Whenever any persons shall meet each other on any bridge or road, traveling with carriages, wagons, sleds, sleighs or other vehicles, each person shall *seasonably drive* his carriage or other vehicle to the right of the middle of the travelled part of such bridge or road, so that the respective carriages, or other vehicles aforesaid, may pass each other without interference.

In 1849, "seasonably" was understood as meaning not done rashly or in haste. *Bagnall v. Ableman,* 4 Wis. 184 [*163], 200 [*178] (1855).[3] A synonym for haste is "speed." *Webster's Third New Int'l Dictionary* 1037 (unabr. 1986). Thus, in 1849, when a person in a vehicle met another vehicle on the road, each driver had to

---

[2] *Krueger v. State,* 84 Wis. 2d 272, 280, 267 N.W.2d 602 (1978) *cert. denied,* 439 U.S. 874 (1978).

[3] The common understanding of "seasonably" directs us to "seasonable." *Webster's Third New Int'l Dictionary* 2049 (unabr. 1986). "Seasonable" means "1: occurring in good or proper time .... 2: suitable to or in keeping with the season or circumstances." *Id.* According to Black's Law Dictionary, "seasonable" means "[w]ithin the time agreed on; within a reasonable time." *Black's Law Dictionary,* 1353 (7th ed. 1999).

drive on the right side of the road not in haste, that is, without speeding in order to avoid interfering with each other.

¶ 76. Requiring drivers to drive their vehicles "seasonably" under certain circumstances undoubtedly represents the "forerunners" of modern speeding laws. *See Village Foods,* 254 Wis. 2d 478, ¶ 27. The fact that this offense differs slightly in its means from modern day speeding, in that the 1849 offense did not regulate speed of its own accord, is an insufficient distinguishing characteristic that does not restrict the right to a jury trial. *See id.,* ¶ 28. A fair reading of the antedated offense leads me to the conclusion that it was an essential "counterpart;" indeed, it represents an origin of modern day regulations of motor vehicles' speed.

B

¶ 77. The next step is to figure out whether a person challenging a law of the road violation had a right to a jury at all. Given that the laws of the road offenses were punishable by nominal monetary fines, these offenses would have been tried in justice of the peace courts. *See* Wis. Stat. ch. 33 (1849);[4] Wis. Stat. ch. 88, § 5(5).[5] In a justice of the peace court, a defendant had a right to up to a six-person jury. Wis. Stat. ch. 88, § 80.[6]

¶ 78. Furthermore, in some situations, a defendant convicted in a justice of the peace court could

---

[4] *See* Lead op., ¶ 30 n.23. All references to the Wisconsin Statutes are to the 1849 version unless otherwise indicated.

[5] Wisconsin Stat. ch. 88, § 5(5) stated: "Every such justice shall have jurisdiction over and cognizance of the following actions and proceedings: . . . Actions for a penalty not exceeding one hundred dollars, given by any statute of this state."

[6] Wisconsin Stat. ch. 88, § 80 stated:

557

appeal to the county courts. Wis. Stat. ch. 88, § 226;[7]

> In every civil cause brought before a justice of the peace, after issue joined, and before the justice shall proceed to an examination of the testimony, or to inquire into the merits of the cause, either party, on first paying to the justice the jury fees in advance, which shall be taxed against the losing party, may demand that the cause be tried by a jury of six men.

The parties could agree on a jury comprised of less than six jurors, however. Wis. Stat. ch. 88, § 86 ("The parties may agree upon six, or any less number of jurors to try the cause . . . .").

[7] Wisconsin Stat. ch. 88, § 226 provided:

> Any party to a final judgment rendered by a justice of the peace, where the recovery shall exceed fifteen dollars, except judgment of non-suit, exclusive of costs, conceiving himself aggrieved thereby, may appeal therefrom to the county court of the county, where the same was rendered, in the following cases:

> 1. Where the judgment was rendered upon an issue of law joined between the parties:

> 2. Where it was rendered on an issue of fact joined between the parties, whether the defendant was present at trial or not.

Wis. Stat. ch. 88, § 227 also dealt with appeals from justice of the peace courts where the judgment was less than fifteen dollars. That section stated:

> A party may appeal from a judgment of a justice, where the judgment is less than fifteen dollars, in the following cases:

> 1. Where the claim of either party, as proved at the trial shall exceed fifty dollars:

> 2. Where the defendant did not appear and plead, and final judgment was rendered for the plaintiff, on the merits of his claim.

Some of the violations of the laws of the road, including the forerunner for our modern day speeding laws, allowed for forfeitures of more than $15. Wis. Stat. ch. 33, §§ 1 and 2 ($20 forfeiture for failing to seasonably drive carriage or vehicle on the right side of the road when persons meet on road); ch. 33, § 5 ($20 forfeiture for failure to fasten horses when passengers remain in horse drawn vehicle).

Wis. Stat. ch. 86, § 2;[8] Wis. Stat. ch. 86, § 29.[9] Violating the antedated essential counterpart of speeding, Wis. Stat. ch. 33, § 1, constituted one of the offenses that could be appealed. *See* Wis. Stat. ch. 88, § 226 (appeals to county courts if judgment exceeds $15); Wis. Stat. ch. 33, § 2 (establishing fine of not more than $20 for violating Wis. Stat. ch. 33, § 1). As opposed to justice of the peace courts, county courts were courts of record. Wis. Stat. ch. 86, § 2 ("The county court shall be a court of record . . . ."). While in the county courts, the defendant could request a jury trial on issues of fact. Wis. Stat. ch. 86, § 16.[10]

Some were for $5 per day of violation. ch. 33, § 3 ($5 forfeiture each day a person employs drunken drivers); ch. 33, § 4 ($5 forfeiture each day for employer's failure to fire intoxicated driver).

One other law of the road carried no specific monetary forfeiture. Chapter 33, § 6 (owners of vehicles carrying passengers for hire are jointly and severally liable for all injuries and damages done by drivers).

[8] Wisconsin Stat. ch. 86, § 2 stated in pertinent part: "The county court . . . shall have . . . exclusive appellate jurisdiction of all cases of appeal . . . from justices of the peace . . . ."

[9] Wisconsin Stat. ch. 86, § 29 provided:

From and after such county courts shall be organized, all cases hereafter required by law to be removed from justices of the peace to the circuit court, whether by appeal or otherwise, shall be removed to the county courts, and the like proceedings therein shall be had in the county court as is by law required in the circuit court. And all laws providing for taking cases to the circuit court from justices' courts, shall from thenceforth be construed to mean and read, to the county court, instead of the circuit court.

[10] Wisconsin Stat. ch. 86, § 16 read:

If an issue of law be made in the cause, it shall be tried by the court; if an issue of fact, it shall on demand of either party, as hereinafter provided, be tried by a jury to consist of not more than

¶ 79. The fact that defendants could obtain a jury either in the justice of the peace courts or, in some instances, in the county courts shortly after the adoption of the constitution satisfies me that there was a right to a trial by jury at the time of the constitution's adoption. Accordingly, a constitutional right to trial by jury existed for violations of the laws of the road in general, and for the essential counterpart to speeding in particular.

## C

¶ 80. The next question, then, is how large did the jury have to be? As noted above, a party in the justice of the peace court could request a jury of up to six persons. Wis. Stat. ch. 88, § 80. Whether a jury of six, rather than a jury of 12, persons in the justice of the peace courts was constitutional, however, was never tested. *See Norval*, 2 Wis. at 23, [*30]. *Norval* explicitly left this question unanswered. *Id.*

¶ 81. Assuming that the legislature could constitutionally limit the size of the juries in justice of the peace courts to six people, it does not follow that the answer to the question of how large the jury had to be must be six persons. As noted, a defendant may have been able to appeal from a judgment of the justice of the peace court to the county courts. *Id.*

¶ 82. With regard to the size of the jury in county courts, Wis. Stat. ch. 86, § 16 provided that the jury could be comprised of "not more than six persons." However, in 1853, this court declared this statute unconstitutional as violating Article I, Section 5. *Nor-*

six persons; and if no jury be demanded by either party, the issue shall be tried by the court.

*val,* 2 Wis. at 23, [\*30]. The *Norval* decision reveals why McGrew should be entitled to a jury of 12.

1

¶ 83. At issue in *Norval* was whether the limitation on the number of jurors to six in county courts by virtue of Wis. Stat. ch. 86, § 16 violated Article I, Section 5. The *Norval* court framed the issue as whether a jury of six persons constituted "such a *trial by jury* as is contemplated by section 5 of article 1 of the Constitution?" *Norval,* 2 Wis. at 19, [\*25] (emphasis in original).

¶ 84. The *Norval* court laid down the core doctrinal principle that Article I, Section 5 secured the right to "trial by jury" as it existed "at the time of the formation and adoption of the Constitution by the people of this State." *Id.* at 22 [\*29]. After undergoing an extensive historical examination of the common law practices regarding juries, this court concluded that the common law revealed that "trial by jury" meant that a jury was to be comprised of 12 persons. *See id.* at 20–23, [\*26–\*30]. Thus, this court held:

> In our view of the provisions of the Revised Statutes concerning County Courts, where they restrict the jury to *six* persons, they conflict with the enjoyment of a constitutional right, secured to every citizen, namely, the right of trial by a jury of *twelve* men[.]

*Id.* at 23, [\*30] (emphasis in original). Therefore, because Wis. Stat. ch. 86, § 16's limitation on the number of jurors to six persons in county court was inconsistent with the constitution, this court declared the statute unconstitutional. *Id.*

¶ 85. Aside from this holding, it is noteworthy that part of this court's historical examination recog-

nized that prior to the formation of the Wisconsin Constitution, the judiciary system was comprised of the following:

> [A] Supreme Court, in which no questions of fact were tried by a jury; District Courts, in which grand and petit juries were empanneled, the latter consisting of *twelve* men; Courts of Probate, wherein a jury was not used; and courts of justices of the peace, in which, in actions of forcible entry and detainer, a jury of twelve, and in all other cases of trial, of six only, was allowed.

*Id.* at 23 [*29–30]. This court recognized that certain actions in justice of the peace courts required 12 person juries but others did not. *Id.* While the *Norval* court recognized this, it explicitly did not pass on whether such practices would pass constitutional scrutiny. *Id.* at 23 [*30].

¶ 86. However, the *Norval* court did make two observations regarding this pre-constitutional judiciary system that are particularly relevant here. First, the court remarked that "the party aggrieved by the decision before the justice [of the peace court], might, in certain cases, remove the case by appeal to the District Court, where a trial by jury of twelve men would be available." *Id.*

¶ 87. Second, the court noted that justice of the peace courts were not "courts of record." *See id.* Regarding all of the courts that were courts of record, the *Norval* court specifically observed that the trial by jury meant that a jury would be comprised of 12 persons, and that right "remains inviolate":

> [W]hen our Constitution was adopted, we had no court of record in existence in Wisconsin, in which the number of the jury for trials of facts in any case, except by consent, could be less than twelve; so that it cannot

> be said that when a trial by jury, in a court of record such as the County Court, must be by a jury of six persons and no more, the trial by jury in a court of record which has been enjoyed before the adoption of the Constitution, *remains inviolate.*

*Id.* (emphasis in original).

2

¶ 88. Under *Norval,* McGrew is entitled to a 12–person jury for at least two reasons.

a

¶ 89. First, under *Norval,* when an offender charged with violating the laws of the road in general, and Wis. Stat. ch. 33, § 1 in particular, could appeal a judgment from the justice of the peace courts to the county courts, that person would receive a jury of 12 persons. County courts existed up until the creation of Wisconsin's unified court system in the late 1970s. *See* 1 Edwin E. Bryant, *Wisconsin Pleading & Practice,* § 2.64 at 129 (4th ed. 2002). "With the institution of the single-level trial courts, the county courts were abolished and matters formerly heard by them now are heard by the circuit courts." *Id.*

¶ 90. Contrary to the assertions of the concurrence, my view of the *Norval* decision does not merely focus on the fact that an aggrieved party could have appealed to county court. *See* Bradley, J., concurring, ¶¶ 66–69. *Norval* instead makes it clear that where there was a constitutional right to a trial by jury, the number of jurors depended on whether the trial was in county court. Because an offender was entitled to a jury trial of 12 in county courts (regardless of whether that

563

action was commenced there or was on appeal) for laws of the road violations, and because rules of the road can now be heard in circuit courts, I would conclude that a defendant today should have the same right to a 12 person jury in the circuit courts.

b

¶ 91. Second, *Norval*'s historical evaluation reveals that its conclusion that "trial by jury" meant a jury of 12 persons stemmed from the fact that county courts were *courts of record. Norval,* 2 Wis. at 23 [*30]. The circuit courts of today are also courts of record. *See Malinowski v. Moss,* 196 Wis. 292, 220 N.W. 197 (1928);[11] Wis. Stat. § 753.05 (2003–04) (seals); Wis. Stat. § 753.26 (court records); Wis. Stat. § 753.30 (2003–04) (clerk of circuit court).[12]

¶ 92. From this, I read *Norval* as suggesting that what may have been ultimately important was *where* the offense was tried.[13] Part of *Norval*'s reason for not

---

[11] In *Malinowski v. Moss,* 196 Wis. 292, 296, 220 N.W. 197 (1928), this court defined a "court of record" as follows:

> A court of record has been defined as a court where the acts and judicial proceedings are enrolled in parchment for a perpetual memorial and testimony, and which has power to fine and imprison for contempt of its authority; a court that is bound to keep a record of its proceedings, and that may fine or imprison; a court whose proceedings are enrolled for a perpetual memorial and testimony, which rolls are called the records of the court, and are of such high and super-eminent authority that their truth is not to be called in question; a judicial, organized tribunal having attributes and exercising functions independently of the person of the magistrate designated generally to hold it, and proceeding according to the course of the common law; and a court having a seal.

[12] Compare Wis. Stat. § 88.13(2) (2003–04) ("Notwithstanding sub. (1), a municipal court is not a court of record.").

[13] So that my position will not be over read, I make the following two points.

assessing whether justice of the peace courts could constitutionally limit the size of the jury to six was its observations that an aggrieved party from a justice of the peace court could appeal to a court of record (which, before the constitution was enacted was appealed to the District Courts and after the constitution was enacted was appealed to the county courts) and receive a jury of 12 persons there. To me, it is not coincidence that this court allayed its concerns regarding the six-person juries in justice of the peace courts (which it chose not to decide) by noting that 12-person juries could eventually be obtained in a court of record.

¶ 93. Because the former laws of the road violations could be tried in the county courts that were courts of record, and because the current speeding violations are tried in the circuit courts which are courts of record, I would conclude that McGrew is entitled to a jury of 12 persons.

## D

¶ 94. Unlike the lead opinion, I see no legitimate reason for abandoning *Norval*. I do not agree with the

---

First, I agree that there were offenses at common law that would have been tried in a summary manner, without the right to a jury at all. Here, however, we are concerned with an offense that at least secured the right to trial by jury. Once that right attaches, I would conclude that the right to "trial by jury" means that the jury is composed of 12 persons in circuit court.

Second, I recognize that not all judgments for offenses tried before justice of the peace courts could be appealed to county courts. For those offenses that could not be appealed, then the question is whether it was constitutional for justice of the peace courts to sit with six-person juries. I express no opinion on that matter here, other than agree with the concurrence that the constitution required at least that. *See* Bradley, J., concurring, ¶ 52.

lead opinion's sentiment that *Norval* would be decided differently today based on the lead opinion's exceedingly superficial distinctions. *See* Lead op., ¶¶ 45–46.

¶ 95. That *Norval* proclaimed in various places that the jury was to be comprised of men is irrelevant to the ultimate issue of the size of the jury or the nature of the right to "trial by jury." *See* Lead op., ¶ 45. Although the common law practices at the time disgracefully curbed women's abilities to participate in civic affairs, Milwaukee delegate Charles H. Lakin made the following statement in his speech during the constitutional convention regarding Article I, Section 5: "Erect within your temples of justice twelve hollow, graven, brazen images . . . [A]nd if you will, you may call this, *trial by jury.*" *State v. Hansford*, 219 Wis. 2d 226, 236, 580 N.W.2d 171 (1998) (quoting *Journal of the Convention to form a Constitution for the State of Wisconsin*, 124 (1848)(emphasis in original)). Notwithstanding common law practices, the emphasis at the time of the constitutional convention was then on the number, not the gender of the jurors.[14] *Id.*

---

[14] It was not until 1921 that it was recognized that women had the legal right to sit on jury panels. Wisconsin Stat. § 6.015 (1921) stated in relevant part:

> Women shall have the same rights and privileges under the law as men in the exercise of suffrage, freedom of contract, choice of residences for voting purposes, jury service, holding office, holding and conveying property, care and custody of children, and in all other respects.

In 1975, for the first time, the United States Supreme Court concluded that under the Sixth Amendment, "it is no longer tenable to hold that women as a class may be excluded or given automatic exemptions based solely on sex." *Taylor v. Louisiana*, 419 U.S. 522, 537 (1975). *See Taylor* for an interesting discussion of the history of gender bias in jury selection.

¶ 96. The same can be said for where the jury was to be collected from and the procedures for how the jury was to be selected. *See* Lead op., ¶ 45. In my view, these are meaningless distinctions that do not detract from *Norval*'s clear holding: "trial by jury" necessarily means a jury of 12.

¶ 97. That *Norval* did not accord the six-person jury statute a presumption of constitutionality is nothing more than a ploy. No amount of presumption could have saved the statute. The *Norval* analysis made clear that the statute was at odds with the practices that the constitution protected. The legislature cannot achieve by statute what the constitution forbids. *See Marbury v. Madison,* 5 U.S. 137 (1803).

¶ 98. Finally, that the United States Supreme Court has concluded in *Williams v. Florida,* 399 U.S. 78 (1970), that the Sixth Amendment did not require that a jury be comprised of 12 persons has limited import on what the Wisconsin Constitution secures. *See State v. Knapp,* 2005 WI 127, 285 Wis. 2d 86, 700 N.W.2d 899; *State v. Dubose,* 2005 WI 126, 285 Wis. 2d 143, 699 N.W.2d 582. Besides, this court in *Hansford* specifically rejected the holding in *Williams* with respect to Article I, Section 7 of the Wisconsin Constitution.[15] *Hansford,* 219 Wis. 2d at 242–43.

## II

¶ 99. In sum, consistent with *Norval,* I would conclude that "trial by jury" in Article I, Section 5 necessarily means a jury of 12 persons. Because McGrew is entitled to a trial by jury here for his alleged

---

[15] *Hansford*'s analysis relied in part on Article I, Section 5 and the *Norval v. Rice,* 2 Wis. 17, [*22] (1853) decision. *State v. Hansford,* 219 Wis. 2d 226, 242–43, 580 N.W.2d (1998).

violation of the rules of the road, I would conclude that he is entitled to a jury of 12 persons.

¶ 100. For the foregoing reasons, I respectfully dissent.